LEWIS J. POWERS, Appellant, *v.* HENRY D. CLARKE, Respondent.

|127  417|
|137  313|

A creditor, who has required and received a guaranty for his claim, is not responsible for any deception practiced without his knowledge, by the principal, upon the guarantor; nor is he required to make any disclosure or explanation, the withholding of which would not amount to a fraud.

An instrument designed to further a business transaction should be so construed as to promote, rather than retard, its general purpose, and a construction that would operate as a useless restriction upon trade should be avoided if possible.

Plaintiff contracted to sell D. & Co. ten cases of paper at a certain rate per pound, upon a credit, provided that firm would furnish a satisfactory guarantor. The paper was manufactured, but, until arranged and done up in cases and weighed, the amount of the purchase could not be ascertained. At the price fixed, it would ordinarily amount to from $600 to $900. Upon being referred to defendant as guarantor, D. & Co. wrote asking him to give a guaranty "say for one thousand dollars," adding, "It is not likely they would want as much as that." Defendant answered that, while he had no doubt of the reliability of D. & Co., he did not wish to make himself liable for so large an amount, adding, "I am perfectly willing, however, to guaranty the amount of the bills thus far purchased, which I understand amount to about six hundred dollars." Upon receipt of the guaranty, the goods were arranged in parcels, wrapped up and delivered, but not all at one time. The purchase-price amounted to $919.15. In an action upon the guaranty, *held,* that the intent of the ·guarantor was, not to make it a condition that the purchases should not exceed $600, but simply to limit his liability to that sum and for goods already purchased ; and so, that defendant was properly held liable for that amount.

(Argued June 8, 1891; decided October 6, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made March 14, 1889, which reversed a judgment in favor of plaintiff entered upon a verdict directed by the court and ordered a new trial.

This action was upon a guaranty by the defendant to pay for certain goods sold by the plaintiff to a third party.

The plaintiff is a paper manufacturer at Springfield, Massachusetts, having a sales office in the city of New York in

charge of an agent.  On May 14, 1886, he agreed to sell to
the firm of Dikeman & Co. ten cases of paper at fifteen and
one-half cents per pound, upon a credit of three months, pro-
vided they would furnish him a satisfactory guarantor.  On
the same day he learned from Dikeman & Co. that the defend-
ant would guaranty payment for them, and thereupon wrote
to him as follows :

"Mess. Dikeman & Co. of Brooklyn refer to you and say
you will guaranty their bills.  Will you kindly give such a
guarantee, say for one thousand dollars.  It is not likely they
will want as much as that, but in case they do, would like to
have it ; kindly return same by bearer."   *   *   *   "We are
glad to give them long time on purchase, but at close margins
we would like your guarantee."   The defendant answered this
letter on the same day, and, after acknowledging receipt
thereof, said : "While I have no doubt of the integrity and
reliability of Messrs. Dikeman & Co., still I do not care to
make myself liable for so large an amount as one thousand
dollars.  I am perfectly willing, however, to guarantee the
amount of the bills thus far purchased, which I understand
amount to about six hundred dollars."

The terms of sale were agreed upon at the New York office,
but the paper was then at Springfield.  It had been manufac-
tured, but was not ready for shipment, as it was lying loose in
the factory, and there was no means of ascertaining the exact
amount the purchase would come to.

Upon receipt of the guaranty, the goods were arranged in
parcels, wrapped up, weighed and delivered as fast as they
were ready, but not all at one time.  A case of paper, as
known to the trade, varies in weight from 400 to 600 pounds,
and ten cases, at the price agreed upon, would ordinarily
amount to from $600 to $900.   The ten cases in question
averaged 593 pounds each and came to $919.15.

When the bill for the paper became due it was not paid
and the plaintiff at once gave notice of the default, by mail,
to the defendant, who thereupon telegraphed back as follows :
"Your attention is called to the fact that my guaranty only

covered bills purchased previous to the date upon which it was written and does not hold me for any purchases after that date, and said guarantee was limited to six hundred dollars."

There was no evidence of any further sales by the plaintiff to Dikeman & Co.

After an ineffectual effort to collect the amount of his claim from Dikeman & Co. by judgment and execution, the plaintiff brought this action to recover the same from the defendant. The complaint was based upon the foregoing facts and the answer was in substance a general denial.

Upon the trial the facts were established by undisputed evidence, substantially as stated. At the close of the evidence for the plaintiff a motion for a nonsuit was made on various grounds, but it was denied. The defendant then testified that he had no previous acquaintance with the plaintiff or his agent, and that his knowledge of the transaction was confined to the correspondence in evidence and a statement made by his brother-in-law, Mr. Dikeman, of the firm of Dikeman & Co., at the time that the letter containing the guaranty was written, to the effect that he did not know how much the goods would amount to, " but it would not be more than six hundred dollars."

At the close of the testimony the plaintiff moved that a verdict be directed in his favor for the entire amount of his claim, and interest, amounting to $1,045.07. At the same time the defendant moved that a verdict be directed in his favor, whereupon the court ordered a verdict for the plaintiff for the sum of $600 and interest, or $702.20 in all.

Further facts appear in the opinion.

*David J. Dean* and *G. L. Sterling* for appellant. The learned General Term erred both as to matters of fact and of law in reversing the judgment at Circuit on an issue of fraud or misrepresentation. (*Voorhees* v. *Bonesteel,* 16 Wall. 16, 29 ; *Dubois* v. *Hermance,* 56 N. Y. 673 ; *Faure* v. *Martin,* 7 id. 210, 218 ; *Saxton* v. *Dodge,* 57 Barb. 84, 116 ; *Hilson* v. *Libby,* 12 J. & S. 12 ; *Hamilton* v. *Watson,* 12 Cl. & F. 109, 118 ; *Noonan* v. *Lee,* 2 Black. 499 ; *Fishburn* v.

*Jones,* 37 Ind. 119 ; *Ariail* v. *Ariail,* 29 S. C. 84 ; *Smith* v. *Wood,* 42 N. J. Eq. 563 ; 43 id. 603 ; *Marr's Appeal,* 78 Penn. St. 66 ; *W. N. Y. L. Ins. Co.* v. *Clinton,* 66 N. Y. 326 ; *People* v. *Lee,* 104 id. 441, 450 ; *Casoni* v. *Jerome,* 58 id. 315 ; *McWilliams* v. *Mason,* 31 id. 294 ; *Doughty* v. *Savage,* 28 Conn. 146 ; *Pidcock* v. *Bishop,* 3 B. & C. 605 ; *Stitt* v. *Little,* 63 N. Y. 427 ; *Hubbell* v. *Meigs,* 50 id. 480, 489 ; *Jennings v. Broughton,* 5 DeG., M. & G., 126 ; *Payne* v. *Smith,* 20 Ga. 654 ; *Ellis* v. *Andrews,* 56 N. Y. 83 ; *Marsh* v. *Falkner,* 40 id. 562, 566.) The contract of guaranty had a sufficient consideration. (*McNaught* v. *McClaughry,* 42 id. 22 ; *E. C. S. Bank* v. *Coit,* 104 id. 532 ; *Bailey* v. *Freeman,* 11 Johns. 221 ; *Simons* v. *Steele,* 36 N. H. 73, 82 ; *Leonard* v. *Vredenburgh,* 8 Johns. 29 ; *Union Bank* v. *Coster,* 3 N. Y. 203 ; *Rogers* v. *Kneeland,* 13 Wend. 114.) The guaranty should be construed as limiting the defendant's liability to $600, and not as conditional upon the credit to Dikeman & Co. not exceeding $600. (*Gates* v. *McKee,* 13 N. Y. 232 ; *Rindge* v. *Judson,* 24 id. 64 ; *Pratt* v. *Matthews,* 24 Hun, 386–389 ; *Curtis* v. *Hubbard,* 6 Met. 186 ; *White* v. *Hoyt,* 73 N. Y. 505, 510, 511 ; *Belloni* v. *Freeborn,* 53 id. 383, 388 ; *Drummond* v. *Prestman,* 12 Wheat. 515, 518 ; *Lawrence* v. *McCalmont,* 2 How. [U. S.] 426 ; *Mayer* v. *Isaac,* 6 M. & W. 605 ; *Mason* v. *Pritchard,* 12 East. 227.) There was no departure by the plaintiff from the terms of the guaranty as understood by him, and according to its reasonable construction. (*Grant* v. *Smith,* 46 N. Y. 93 ; *Rindge* v. *Judson,* 24 id. 64, 72 ; *Pratt* v. *Matthews,* 24 Hun, 386 ; *People* v. *Backus,* 117 N. Y. 196 ; *Benjamin* v. *Hillard,* 23 How. [U. S.] 149, 165 ; *Kay* v. *Groves,* 6 Bing. 276.)

*Isaac B. Potter* for respondent. The defendant's guaranty was not a general or continuing one. (*Hunt* v. *Smith,* 17 Wend. 179 ; *Walrath* v. *Thompson,* 6 Hill, 540 ; *Ludlow* v. *Simond,* 2 Caine's Cas. 56, 57 ; *Miller* v. *Stewart,* 9 Wheat. 680 ; *Leeds* v. *Dunn,* 10 N. Y. 469 ; *E. Bank* v. *Kaufman,* 93 id. 273 ; *Kingsbury* v. *Westfall,* 61 id. 356 ; *Barnes* v.

*Barrow,* Id. 39; *Smith* v. *Townsend,* 25 id. 479; *Schwartz* v. *Hyman,* 107 id. 562.) Defendant's motion to dismiss the complaint was well founded, and should be sustained by this court. (*Doughty* v. *Savage,* 28 Conn. 146; *Stone* v. *Compton,* 5 Bing. [N. C.] 142; *Pidcock* v. *Bishop,* 3 B. & C. 605; *Cecil* v. *Plaistow,* 1 Anst. 202; *Nerot* v. *Wallace,* 3 T. R. 462; *Middleton* v. *Onslow,* 1 P. Wms. 768; *Tapp* v. *Lee,* 3 Bos. & Pul. 371; Burge on Suretyship, 9; *Hamilton* v. *Watson,* 12 Cl. & Fin. 109; Story's Eq. Jur. § 324; *F. Bank* v. *Cooper,* 36 Me. 179; *Railton* v. *Matthews,* 10 C. & F. 934; *Miller* v. *Stewart,* 9 Wheat. 680; *Grant* v. *Smith,* 46 N. Y. 93; *Paine* v. *Jones,* 76 id. 274, 279; *Bangs* v. *Strong,* 4 id. 315; *Ludlow* v. *Simond,* 2 Caine's Cas. 56; *Leeds* v. *Dunn,* 10 N. Y. 469; *Gates* v. *McKee,* 13 id. 232; *Smith* v. *Townsend,* 25 id. 479; *Barnes* v. *Barrow,* 61 id. 39; *Kingsbury* v. *Westfall,* Id. 356; *E. Bank* v. *Kaufman,* 93 id. 273; *Schwartz* v. *Hyman,* 107 id. 562; 2 Pars. on Cont. [3d. ed.] 17; *People* v. *Chambers,* 60 N. Y. 158; *Rindge* v. *Judson,* 24 id. 64; *White's Bank* v. *Miles,* 73 id. 335.) There was no assent to the same agreement and in the same sense, between the plaintiff and defendant such as is necessary to constitute a contract. (*Pope* v. *Anderson,* 9 C. & P. 564–568; *Smith* v. *Hughes,* L. R. [6 Q. B.] 597; De Colyar on Guarantees, 2–7.)

VANN, J. The learned judges of the General Term were of the opinion that the letter of guaranty was notice to the plaintiff of an understanding, on the part of the defendant, that all the purchases which had been made by Dikeman & Co. would amount to but about $600, and as they exceeded that sum that he had acted upon an erroneous statement of the facts. They based their order of reversal upon the theory that the defendant had been deceived; that the plaintiff knew it, and hence had no right to rely upon a guaranty procured by misrepresentation. No such issue, however, was raised by the pleadings, for the defense of fraud, or the reliance of defendant upon an erroneous statement of the facts is not suggested in the answer, which contains simply admissions

and denials, but nothing by way of confession and avoidance. The defendant did not ask that any such question should be submitted to the jury. Moreover, the nature of the contract and of the subject-matter thereof was such that neither party could know what the ten cases would amount to until the last parcel had been weighed, or not until partial delivery had been made, when it was too late for the plaintiff to recede, or to refuse further performance. The contract was for ten cases at fifteen and one-half cents per pound, and according to the usage of the paper trade, with reference to which the parties are presumed to have contracted, that number of cases would vary in price from "about $600," which is the language of the guaranty, to about $900. The defendant had notice that the amount of the purchase was uncertain, because Dikeman told him that he did not know what it would come to, and his remark that it would not amount to more than $600 was in the nature of an estimate rather than the assertion of a fact. The letter of the plaintiff asking for a guaranty was also indefinite as to the amount of the purchase, for while he named $1,000 as the limit of liability, he added that it was not likely that Dikeman & Co. would "want as much as that." The defendant, in answering this letter, seems to distinguish between the amount that he expected said firm might buy and the amount that he was willing to guaranty, for after speaking of his confidence in the integrity and reliability of Dikeman & Co. he says: " Still I do not care to make *myself* liable for so large an amount as one thousand dollars." He was willing, however, to become personally liable for six hundred dollars. The plain intimation seems to be that while it would be safe for the plaintiff to give the credit asked for, he was unwilling himself to guarantee the payment of more than the smaller sum named. His allusion to the bills " thus far purchased " also implies an expectation that further purchases would be made.

While the law requires the creditor to act in good faith toward the guarantor, it does not hold him responsible for any deception practiced by the principal upon the latter without

the knowledge of the former, nor require him to make any disclosure or explanation, the withholding of which would not amount to a fraud. ( *Western N. Y. Life Ins. Co.* v. *Clinton,* 66 N. Y. 326; *Casoni* v. *Jerome,* 58 id. 315; Baylies on Sureties & Guarantors, 214; Burge on Suretyship, 218.)

We do not think that there was any evidence to support the conclusion that the plaintiff knew when he received the guaranty that it had been procured by misrepresentation of the facts. Indeed, it is very doubtful whether the facts were intentionally misrepresented to the defendant at all. He did not so claim when notified of the default of Dikeman & Co., nor in his answer to the complaint, nor in his testimony on the trial. But even if he was deceived, the plaintiff did not know it, for he had no information on the subject aside from that conveyed in the letter of guaranty, which we consider inadequate for that purpose. The amount named was so qualified by the word " about" as to render it too indefinite to require the plaintiff to volunteer information. A failure to correct that which purported to be merely an approximation is no evidence of bad faith, especially as the plaintiff did not at the time know whether the purchase would exceed the sum mentioned or not.

Moreover, as each party moved that a verdict be directed in his favor, and neither asked to go to the jury upon any question, a finding that there was no fraud will be presumed, because the evidence warranted it. (*Sutter* v. *Vanderveer,* 122 N. Y. 652.)

The learned counsel for the defendant insists that the order of the General Term should be affirmed, aside from the question of fraud, because, as he further claims, the guaranty was made upon the condition that the purchases should not exceed six hundred dollars. This position depends upon the construction to be given to the last sentence of the letter of guaranty, in which the writer, referring to " the bills thus far purchased," says that he understands they amount to about six hundred dollars. The defendant contends that the real meaning is as if the paragraph read, " provided the bills do not exceed six

hundred dollars." On the other hand the plaintiff claims that this clause is not a limitation of the credit of Dikeman & Co., but of the extent of defendant's liability.

A contract of guaranty, as all the authorities agree, should receive a reasonable interpretation, according to the intent of the parties as disclosed by the writing, which, in a case of ambiguity, may be read in the light of surrounding circumstances. (*People* v. *Lee,* 104 N. Y. 441; *Evansville National Bank* v. *Kaufmann,* 93 id. 273; Brandt on Suretyship, 106; Fell's Law of Guaranty, 43.) Some of the cases go farther and hold that if the doubt is not thus dispelled it should be resolved against the guarantor, because the words used are his own, and he is responsible for the ambiguity. (*Belloni* v. *Freeborn,* 63 N. Y. 383, 388; *Walrath* v. *Thompson,* 4 Hill, 200; *Crist* v. *Burlingame,* 62 Barb. 351.)

It is not reasonable to suppose that the defendant in writing this mercantile instrument to aid his friends in obtaining credit, intended to limit their credit, especially when he was so careful to throw no doubt upon the responsibility of the firm of which his brother-in-law was a member. On the other hand, it is reasonable to suppose that he intended to limit his own liability, because his interest would thereby be promoted. The words of limitation should, therefore, be applied to his liability, rather than to that of the firm, especially as he had already written that he did not care to make himself liable for so large an amount as one thousand dollars. The limitation of his own liability to six hundred dollars is thus made emphatic by contrast with what might be the liability of the firm. This seems to have been the construction that the defendant himself placed upon his words, because he said in his telegram to the plaintiff, when notified of the failure of Dikeman & Co. to pay, that "said guarantee was limited to six hundred dollars." He did not suggest that it was conditional, or that if the purchases exceeded $600 he was not to be bound. It is apparent that he had in his mind his own liability when he wrote the contract and the telegram, and not the liability of the firm in excess of the amount assumed by him. This practical con-

struction of the guaranty by the guarantor himself accords
with our own, as it is the most reasonable and, therefore, the
most probable.    If he intended to effect such a strange pur-
pose as to place a limitation upon the credit of Dikeman &
Co., and thus impair their ability to protect him from liability
on his guaranty, he should have made his meaning plain, so
that the plaintiff could have understood it and withheld his
goods.    Because he was unwilling to bind himself beyond a
certain sum, why should he restrict his principals to an
unreasonable condition in which he had no concern?    An
instrument designed to further a business transaction should
be so construed as to promote, rather than retard, its general
purpose, and a construction that would operate as a useless
restriction upon trade should be avoided, if possible, as not
within the design of a reasonable man.

We think that the defendant intended to become responsible
for the firm to the amount of $600, not by way of a continu-
ing guaranty, but for goods already purchased, and that he did
not intend to annex any other condition to his contract, or
otherwise limit his liability.

The following authorities, more analogous in principle than
similar in their facts, are cited in support of this construction.
(*Stillman* v. *Northrup*, 109 N. Y. 473 ; *Melcher* v. *Fisk*,
67 id. 607 ; *Ringe* v. *Judson*, 24 id. 64 ; *Gates* v. *McKee*, 13
id. 232 ; *Union Bank* v. *Coster*, 3 id. 203 ; *Pratt* v.
*Matthews*, 24 Hun, 386 ; *Parker* v. *Wise*, 6 M. & S. 239.)

The order of the General Term should be reversed and the
judgment entered upon the verdict affirmed, with costs of
both appeals.

All concur.

Order reversed and judgment affirmed.