CHALLENGE CORN PLANTER COMPANY, Respondent, *v.* FRANK DIEL, Appellant.

*Guaranty of goods to be sold — not binding where there is no present consideration moving to the guarantor — abandonment of the contract — an alteration made without the consent of the guarantor extinguishes his liability — a change in the time of payment.*

A guaranty should be construed according to the apparent intention of the parties, and when its meaning is ascertained the guarantor or surety cannot be held liable beyond the precise terms of his contract.

Persons who are *sui juris* may waive or abandon a contract, and where both of the contracting parties concur in a waiver or abandonment, the contract is dissolved.

An agreement to guarantee the payment by another of goods to be sold in the future, not founded upon any present consideration moving to the guarantor, imposes no obligation or liability upon the guarantor and is revocable by him at any time before it is acted upon.

Any alteration of the contract, made without the consent of the guarantor or surety, extinguishes his liability irrespective of the question whether the alteration would work an injury to him or not.

A change in the time when payment is to be made under a contract is a material alteration of the contract and discharges its guarantor.

APPEAL by the defendant, Frank Diel, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 13th day of March, 1895, upon the verdict of a jury rendered by direction of the court after a trial at the Onondaga Circuit, and also from an order entered in said clerk's office on the 18th day of March, 1895, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover a balance, alleged to be due, of the purchase price of certain refrigerators alleged in one count of the complaint to have been sold by the plaintiff to the defendant, and in a second count to have been sold to one S. M. Fort under an alleged guaranty of payment made by the defendant at the time of a sale of refrigerators by the plaintiff to said Fort.

*Goodelle & Nottingham* and *William Nottingham*, for the appellant.

*Jenney & Marshall*, for the respondent.

PER CURIAM:

In February, 1892, an agent of the plaintiff went to the store of the defendant to sell him refrigerators manufactured by the plaintiff, and an arrangement was entered into between them by which the defendant was to have the sale of the plaintiff's refrigerators in the city of Syracuse for the year 1892, and the defendant was to give the plaintiff an order for a carload of refrigerators. After this arrangement was consummated, the defendant suggested to the plaintiff's agent that he help him by going to and selling S. M. Fort refrigerators for his account. The agent went and obtained an order directed to the plaintiff which, so far as material, was:

"Please send me, on or about May 1st, 1892, the below refs. and chests, the No. 8 to cost $7.00 each, net; all others at a discount of 45 per cent; your 1892 list. Terms, payable July 1st, or note, or 2 per cent May 10th, '92, freight allowed to Syracuse, N. Y.

"(Signed.)      S. M. FORT."

The order was delivered to the defendant, who entered it, and on February twenty-fourth, wrote the following, which was directed to the plaintiff: "Please enter my order for 1 carload of Challenge refrigerators at 50 and 5 per cent. List delivered. Terms, May 1st, 60 days or 2 per cent, cash 10 days. And the enclosed order from S. M. Fort to apply on the carload, you to charge and bill the refrigerators direct to him, and collect pay for same as specified in the order, and to credit me with the difference in amt. between 45 per cent and 50 and 5 per cent, and I to guarantee the payment of same   Will send specifications for balance of carload in time to ship with Fort's order. (Signed) Frank Diel."

The defendant then delivered the Fort order and his own to the agent, who mailed them to the plaintiff. On March fourth, the plaintiff wrote the defendant: " Your order accepted, and will go forward as per your order. Many thanks."

On March twenty-first a bill.of the refrigerators was sent to Fort, which, so far as material, was: " Challenge Corn Planter Co. * * * Sold to S. M. Fort, Syracuse, N. Y. Due July 1st, 1892. Interest after due. (Then follows the list of refrigerators and prices.) Payment on above guaranteed by Frank Diel, Syracuse, N. Y." On the twenty-sixth of the same month Fort wrote the plaintiff: " I have to-day received your invoice of March 21st, amounting to $409.73. I am somewhat surprised at this, as according to order given your agent it was conditional and so accepted in writing by him; that was, that if you accepted my order you were to advise me by return mail. After waiting and not hearing from you, I concluded you had decided not to accept, and so within the past few days have placed my order with another house. In view of the facts, the goods must remain at the depot at your disposal, or at least until I hear from you."

It seems that on the twenty-ninth of March Fort's letter was sent to the defendant, after which he wrote the plaintiff: " Yours of 29th, also Mr. Fort's letter, received this A. M., and I am at a loss to know why you should send his letter to me, as I have nothing to do with the transaction. Your man made the sale, and he must have known what he was about, and if you have Mr. Fort's order, and signed by him, I would make him take the goods; as far as his having placed his order with another house is all bosh, for I know better. He is trying to crawl out, and thinks he has ordered too many. I shall take mine when they arrive, and will have nothing to do with those consigned to Mr. Fort."

On April fifth the defendant's son, who was in charge of his business, wrote plaintiff: " The refrigerators came this A. M., and as Mr. Fort's refrigerators came first and near the door, I went over and told him they were there, and to get them so we could get ours out, and to my astonishment he replied that he would not touch them, and absolutely refused to receive or have anything to do with them, claiming that you violated your agreement with him in selling us the goods. Mr. Diel is out of town, and won't be home until

Saturday night, and as I am not familiar with the particulars of the case, I would not take his lot or pay the freight on them. They are laying over in the freight yard, and I won't touch them until I hear from you; so please advise me on receipt of this by wire what to do in the matter, or what course you intend to pursue with Mr. Fort. Awaiting your reply, I am."

On April seventh the plaintiff telegraphed the defendant: "Receive the refrigerators, and draw on us for freight." On the same day it wrote: "This refrigerator transaction is an (unknown quantity to us). We only know Mr. Neal, of N. Y., sent us the order, and we notified the party upon recpt. of same; further we know not. We wire you to receive, pay freight and draw on us for freight. If you can sell them, all right; if not, will order away. One thing sure: Whatever is honorable or fair on the part of our Co. between you and us will be carried out to the letter. Matters not what Mr. Neal or Mr. Fort has to say in the matter. Hoping this is satisfactory, we remain."

On the twelfth of April Fort sent the plaintiff this letter: "In the latter part of March we wrote to you about the refrigerators named in an invoice dated the 21st of March. We have not had any response from you on the subject and would be glad of a reply by first mail." On April fourteenth the plaintiff replied: "Yours of the 12th inst. at hand. It seems our correspondence is quite unsuccessful. First, upon receipt of your order here (given Mr. Neal, of N. Y.) we acknowledged receipt the same day. Not hearing anything from          , never dreamed you did not receive our letter of acknowledgment; of course we shipped the goods. Upon receipt of invoice we read your letter saying you would not receive them, as you had not received notice from us, that we accepted the order, with the statement you did not understand — that others were to handle the same line in Syracuse. This is a thunderbolt to us, as we were ignorant of any talk, promises; in fact, all we knew was the order to ship so and so. Upon receipt of same we wired our old customer, Frank Diel, to pay freight, receive them subject to our order, and there they are, as we suppose, not knowing anything to the contrary. We are very sorry, as it must be annoying to you, as well as expensive to us, of course; we can dispose of the refrigerators, but that does not restore the confidence between us that ought to

exist. You understand, as a business man, that manufacturers and their customers' interests are mutual, and we endeavor to please our customers rather than to displease them. We aim to do so. We cannot read the hearts and minds of men, and we do not know what salesmen say to our customers; but we do intend to deal fair and just, and we don't make refrigerators enough to change us one inch from doing the square thing to all. We would like to have you take the goods; but if you cannot see your way clear, under the circumstances, we shall, of course, accept the situation as it stands. If you wish and know who we are, ask Hy. Lacy, cashier; he will tell you. Trusting explanation satisfactory, we remain."

On April sixteenth Fort again wrote the plaintiff: " Yours of the 14th inst. to hand and must say that our correspondence has at least been unfortunate. Now, although I was not notified of the acceptance of my order, and in consequence ordered other goods, yet, although it will almost double up my stock, I will take them provided you will take the payment on them by note for half the amount dated July 1st and note for the balance in a reasonable time thereafter. The goods are now at the depot warehouse, and if you agree to my proposition you will please wire me at my expense." In response to this the plaintiff on April eighteenth wired Fort: " We accept of your proposition," and on the same day wrote: " This is to confirm my message to-day, ' We accept of your proposition.' We hope same will be satisfactory you." On the fourteenth of July the plaintiff sent a blank note to Fort, accompanied by this letter: " In reply to yours of 12th. Please fill out, sign and return to us the enclosed blank note, making it due at time you can conveniently pay it."

On the 14th of September, 1892, the defendant sent the plaintiff his check for $236 to balance the account for the refrigerators purchased by him, and in the account was included $55.76 for commission on the refrigerators sold to Fort. On September sixteenth the plaintiff wrote the defendant: " Yours of 14th inst. enclosing cash, $236.00, in full of account, is received with thanks. Soliciting your valued future orders we are."

On February 23, 1893, the plaintiff wrote the defendant: " We have not as yet been able to get a settlement with S. M. Fort of

your place.  We have done everything we could in regard to the matter, and have waited as long as we can and shall expect you to settle for this at once as per contract.  Let us hear from you."  To this the defendant, on March fourth, replied : " Yours of Feby. 23rd received and in reply would say that I am very much surprised at its contents ; that you should ask me to pay for Mr. Fort's refrigerators after my having written you on March 31st, 1892, that I would have nothing whatever to do with them, and I refer you to my letter of that date, and I positively refuse to pay for them and think it a great imposition and nerve on your part to ask anything of the kind."  On March 6, 1893, the plaintiff wrote : " Yours of the 4th inst. at hand.  We hold your guarantee for the acct. and we shall look to you for the payment of the acct.  If we are forced to collect the acct. from you we shall do so."

The foregoing is a brief synopsis of the evidence so far as it is material to the questions involved on this appeal.  The trial court held that the defendant's letter of February 24, 1892, and the plaintiff's acceptance, constituted a guaranty of the payment of the bill of goods sold Fort ; that, as a matter of law, the plaintiff was entitled to recover of the defendant the amount of such bill and interest and directed a verdict accordingly.

The appellant challenges the correctness of this decision, and insists that the contract resulting from Fort's order and its acceptance was dissolved by a new and different one, or was at least so far modified or changed as to relieve the defendant from any liability upon his guaranty.

Whatever controversy may have formerly existed in respect to the rule governing courts in the construction of guaranties, it now seems to be settled in this State that they should be construed according to the apparent intention of the parties.  But when the meaning is ascertained the surety cannot be held liable beyond the precise terms of his contract.  (*Evansville Nat. Bank* v. *Kauffmann*, 93 N. Y. 273, 281 ; *Powers* v. *Clarke*, 127 id. 417, 424 ; *McShane Co.* v. *Padian*, 142 id. 207, 210.)  Any alteration of a contract as to which a third person has become a guarantor or surety, without his consent, extinguishes his liability, irrespective of the question whether the alteration would work any injury to him or not.  This is because the surety has never made the contract upon

which he is sought to be charged. (*The People* v. *Vilas*, 36 N. Y. 459; *Paine* v. *Jones*, 76 id. 274, 278; *Page* v. *Krekey*, 137 id. 307, 314.) Persons who are competent to make a contract are equally competent to waive or abandon it, and where both concur in a waiver or abandonment the contract is dissolved and the rights of each under it are at an end. (*Graves* v. *White*, 87 N. Y. 463; *McEachron* v. *Randles*, 34 Barb. 301; *Tayleur* v. *Wildin*, L. R. [3 Ex.] 303; *Kay* v. *Groves*, 6 Bing. 276.) An agreement to guarantee the payment by another for goods to be sold in the future, not founded upon any present consideration passing to the guarantor until acted upon, imposes no obligation and creates no liability upon the part of the guarantor, and is revokable by him at any time before it is acted upon. (*Jordan* v. *Dobbins*, 122 Mass. 168; *Offord* v. *Davies*, 12 C. B. [N. S.] 748; *Agawam Bank* v. *Strever*, 18 N. Y. 502, 514; *Hunt* v. *Roberts*, 45. id. 691, 696.)

When we consider the facts in this case and apply to them these principles, we think it is obvious that the court erred in holding as a matter of law that the plaintiff was entitled to the recovery directed. An examination of the correspondence between the parties tends to show that there was a waiver or abandonment of the original contract between the plaintiff and Fort. But, be that as it may, that it was altered there can be no doubt. The undisputed evidence shows that under the original contract between the plaintiff and Fort the terms of payment were: " Payable July 1st, or note, or ·2· per cent May 10th, '92." Under that contract Fort refused to take the goods upon the ground that he had received no notice from the plaintiff of the acceptance of his order. Subsequently he proposed to the plaintiff that he would take them if the plaintiff would " take the payment on them by note for one-half the amount dated July 1st and note for the balance in a reasonable time thereafter." This proposition was accepted by the plaintiff. Construing Fort's original order as favorably to the plaintiff as possible, Fort was required by it to pay the amount July first or then give his note therefor. By the subsequent agreement he was required to give his note for only one-half of the purchase price at that time, and for the remainder he was to give his note in a reasonable time thereafter. Hence there was an essential change in the time of payment, which might materially affect the defendant. The defendant might

have been willing to guarantee payment under the first contract and unwilling to guarantee it under the second. His contract with the plaintiff was to guarantee the payment under the precise terms of the original order. When a new agreement was made the defendant was not liable, because he had never made any contract to guarantee the payment under the latter.

The judgment must be reversed and a new trial granted, with costs to abide the event.

Present — Hardin, P. J., Martin and Merwin, JJ.

Judgment reversed and a new trial granted, with costs to abide the event.