## AMERICAN CONVEX CO., Inc., v. TOMPKINS.

(Supreme Court, Appellate Term, First Department. May 5, 1915.)

1. PRINCIPAL AND SURETY &#9750;129—LIABILITY OF SURETY—CHANGE IN PRIN-CIPAL CONTRACT—PROVISION OF BOND.

The bond of one who was canvassing for newspaper subscription and portrait contracts, which was conditioned that the canvasser should faith-fully perform his duties and account for all moneys collected by him "pursuant to various contracts," as well as all drawings made by him, did not authorize a change in the canvasser's contract, so as to materially increase the surety's liability; the clause "pursuant to various contracts," when strictly construed in favor of the surety, having reference to con-tracts with the subscribers, and. not contracts between the canvasser and his employers.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 366–372; Dec. Dig. &#9750;129.]

2. PRINCIPAL AND SURETY &#9750;97—DISCHARGE OF SURETY—CHANGE IN PRIN-CIPAL CONTRACT.

The undertaking of a surety is strictissimi juris, and any change in the principal agreement without the surety's consent discharges his liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 146–168; Dec. Dig. &#9750;97.]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by the American Convex Company, Incorporated, against Irene Tompkins. Judgment for plaintiff, and defendant appeals. Reversed, and complaint dismissed.

&#9750;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued March term, 1915, before LEHMAN, HENDRICK, and COHALAN, JJ.

George M. Schnizel, for appellant.

Jacob J. Alexander, of New York City, for respondent.

HENDRICK, J. This action was brought to recover upon a bond executed by the defendant to the plaintiff under the following circumstances: Upon March 19, 1914, plaintiff and one John Tompkins, defendant's brother, entered into a contract by the terms of which Tompkins agreed to supervise a number of canvassers, to be hired either by plaintiff or said Tompkins, and to expend moneys necessary for their maintenance and pay them such commissions as were approved by the plaintiff, and to make a house-to-house canvass in a certain territory specified therein, and to secure one year's subscription to a certain newspaper, and as an inducement for such subscription to offer as a premium a portrait enlargement made by the plaintiff, and to collect the sum of $1.29 for each subscription upon the delivery to the subscriber, and to pay to the plaintiff the sum of $1.29 for each subscription obtained. For his services the said Tompkins was to be paid the sum of $1 for each subscription obtained and paid for. The plaintiff was to advance moneys necessary to conduct such business, which moneys were to be charged against, and deducted from, Tompkins' commissions. On March 20, 1914, the next day after Tompkins and the plaintiff executed this agreement, the defendant herein executed to plaintiff a bond in the sum of $500, conditioned that said Tompkins "will faithfully perform all his duties intrusted with, and also accounting for all moneys collected by him pursuant to various contracts as well as for all drawings made by him."

The plaintiff, claiming that Tompkins had collected $429.11, had not accounted for merchandise worth $17.68 delivered to him, and had been advanced $976.38, making a total of $1,422.97, and that he was entitled to receive payments for 747 subscriptions obtained at $1 each, and that he had failed to account for or turn over to plaintiff the difference of $429.11, brought this action, and judgment in favor of the plaintiff for that amount was rendered. Upon the trial the defendant showed that, at the time she executed the bond, the contract between plaintiff and her brother was before her, and that she knew its provisions. She also showed that, some two or three weeks subsequent to its execution, the plaintiff and Tompkins made an agreement by which the original contract was materially altered. The amount of the subscription was changed from $1.29 to $1.79, and evidently the number of subscriptions Tompkins was required to obtain was increased from 500 to 1,000, thereby increasing the amount of money Tompkins was to account for. The territory to be covered was also enlarged, and, by reason of these changes, increased duties and liabilities were imposed upon Tompkins, other than those specified in the original contract. These several changes were made without the knowledge or consent of the defendant.

[1] The plaintiff, substantially, concedes that, except for the peculiar wording of the bond, which recites that the defendant is liable

for moneys unaccounted for by Tompkins "pursuant to various contracts," the defendant would not be liable upon the bond, but contends that the words "pursuant to various contracts" shows that "it was contemplated between the parties that changes and modifications might be made." This argument might be conclusive, if it had also been shown that the defendant, when she executed the bond, had knowledge or reason to believe that changes and modifications of the contract might be made between the parties, so as to increase her liability. But nothing of this kind appears. When she executed the bond, but one entire contract was considered by her, and if the bond be read in connection with the contract of employment it seems quite evident that the words, John Tompkins shall account "for all moneys collected by him pursuant to various contracts," necessarily refer to the collection of moneys pursuant to the contracts of subscription he was to obtain under his contract of employment. The words "pursuant to various contracts" have no reference to contracts of employment, but only to contracts upon which by the terms of the employment he was required to collect moneys. It follows that, when the terms of his employment were changed in a manner which materially increased the liability of the principal upon the accounting, the liability of the surety ceased.

[2] It is a well-settled rule that the undertaking of a surety is strictissimi juris. The citations of authority by the respondent support this view. In Kinser v. State, 204 N. Y. 381, 97 N. E. 871, it was held:

The surrounding circumstances and the situation at the time of its execution may be considered in construing its terms.

And in Ulster County Savings Bank v. Young, 161 N. Y. 23, 55 N. E. 483, it was said:

"The liability of a surety is measured by his agreement, and is not to be extended by construction. * * * The extent of his obligation must be determined from the language employed, when read in the light of the circumstances surrounding the transaction."

In the case at bar the defendant was presented with a contract complete in all its terms. This was the only contract then in existence. There was no intimation, or information leading her to believe, that such contract was to be changed or modified, or that any other contract was to be made in the future. The contract sued on is one made between the parties after the defendant's bond was given. It is materially different from the one for whose execution the defendant became liable, and in the entire absence of proof that at the time she executed the bond she knew the changes were contemplated, or that such changes were made with her consent, she is not liable upon the bond under the modified and changed contract. That defendant obligated herself, if Tompkins failed to "faithfully perform all his duties intrusted with," refers only to such duties as were necessary to be performed under the original contract, and cannot be extended to cover the failure to perform increased duties imposed by a new, enlarged, and modified contract. In the case of Challenge Corn Planters Co. v. Diel, 92 Hun, 165–170, 36 N. Y. Supp. 364, 367, the court says:

"Any alteration of a contract as to which a third person has become a guarantor or surety, without his consent, extinguishes his liability, irrespec-

tive of the question whether the alteration would work * * * injury to him or not. This is because the surety has never made the contract upon which he is sought to be charged."

Judgment reversed, with costs, and complaint dismissed, with costs. All concur.