GUARANTY ☞36—NATURE OF LIABILITY—GUARANTY OF NEGOTIABLE INSTRUMENT.

> A bond executed by directors of a corporation indebted to a bank on notes of the corporation discounted by the bank, which recited that the corporation required from time to time loans and discounts, and that the bank required guaranty for their payment, and which declared that the directors jointly and severally bound themselves to pay all loans, and discounts or renewals thereof, made by the bank to the corporation, on its failure to pay the same, on consideration that the bank would make such loans and discounts, covered renewal notes subsequently given by the corporation in place of notes in force at the time of the execution of the guaranty.

> [Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38–45; Dec. Dig. ☞36.]

Appeal from Trial Term, Oneida County.

Action by the Utica City National Bank against John K. Gunn. From a judgment of nonsuit, and from an order refusing to set aside nonsuit and grant a new trial on the minutes of the court, the plaintiff appeals. Reversed, and new trial ordered.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

154 N.Y.S.—45

Lynch, Willis & Titus, of Utica (Charles T. Titus, of Utica, of counsel), for appellant.

Everett, Clarke & Benedict, of New York City (A. Leo Everett, of New York City, of counsel), for respondent.

FOOTE, J. This action is brought to recover of defendant as surety upon a bond held by plaintiff for the sum of $115,000 and interest, being the amount of six promissory notes of the Utica Pipe Foundry Company held by plaintiff, upon the ground that defendant has, by the terms of the bond, promised and agreed to pay these notes upon the failure by the maker to pay them. On and for some time prior to December 7, 1912, plaintiff bank held under discount promissory notes of the Utica Pipe Foundry Company to the amount of $115,000. These notes were made by the Pipe Foundry Company, and indorsed by it and discounted by the plaintiff bank for the accommodation of the Foundry Company. The notes were each payable six months after date, and had been several times renewed.

On December 7, 1912, the cashier of the plaintiff wrote a letter to the Foundry Company, which stated, in substance, that the bank examiner, who had on December 3d completed an examination of the bank, had suggested that such large loans as the bank was carrying for the Foundry Company should be secured by one or more additional names, and in accordance with this suggestion he inclosed with the letter a suitable bond for execution by the directors of the Foundry Company, and stated that, if such bond was properly executed and returned to the bank, it would eliminate all future criticism on the part of the Comptroller of the Currency; also that the examiner had suggested that the notes should be made for four months instead of six months. Upon receipt of this letter by the Foundry Company, its treasurer, Mr. Kernan, set out to secure signatures to the bond of the five directors of the Foundry Company. Two of them, however, refused to sign, whereupon Mr. Kernan consulted the cashier of plaintiff, and was informed that the signatures of the three remaining directors would be accepted. The form of the bond was then changed, by eliminating the names of the two who had refused to sign, and the bond was executed by the other three, namely, John A. Kernan, treasurer, Charles G. Wagner, and the defendant, John K. Gunn, and as so executed the bond was delivered to the bank on or about the day of its date, December 12, 1912. The following is a copy of the bond:

"Articles of agreement this 12th day of December, one thousand nine hundred and twelve, between the Utica City National Bank of Utica, Oneida county, state of New York, party of the first part, and the Utica Pipe Foundry Company, party of the second part, witnesseth: Whereas, the Utica Pipe Foundry Company requires from time to time loans and discounts from the said party of the first part, and the said party of the first part requires security and guaranty for the payment of such loans and discounts so made: Now we, John A. Kernan and John K. Gunn, of Utica, N. Y., and Chas. G. Wagner of Binghamton, N. Y., do jointly and severally bind ourselves and our representatives to pay all loans and discounts, or renewals, or part renewals thereof, made by the said party of the first part to said Utica Pipe Foundry Company, on its failure to pay the same, so promising on the consideration that the said party of the first part shall and does make such loans and dis-

counts in consideration of the execution and delivery of this agreement by us and each of us. The liability of the guarantors whose names are hereunto subscribed shall not exceed in amount the sum of one hundred and fifteen thousand dollars ($115,000.00) on account of this guaranty, with interest on the amounts borrowed.

"Dated, Utica, N. Y.

John A. Kernan.       [L. S.]
"John K. Gunn.        [L. S.]
"Charles G. Wagner.   [L. S.]"

The letter from plaintiff's cashier to the Foundry Company of December 7th was shown to defendant, or its contents stated to him, by Mr. Kernan, before he signed the bond, and defendant was also aware of the fact that the Foundry Company had outstanding bills payable to an amount greater than $115,000, but it does not appear that he knew how much of this paper was held by the plaintiff bank.

As the notes came due from time to time they were renewed in the same form and for the same amounts as before, and at the time this action was begun the bank held the following: Two notes, dated October 2, 1913, each for $20,000, and each payable four months after date. Note dated November 11, 1913, $20,000, four months. Note dated December 22, 1913, $20,000, payable on demand. Note dated January 12, 1914, $15,000, payable on demand. Note dated January 15, 1914, $20,000, payable on demand. On January 17, 1914, the Foundry Company was adjudged bankrupt upon its own petition.

The loans to and discounts for the Foundry Company by plaintiff were not increased in amount after it received the bond, nor was an increase contemplated by the Foundry Company, the bank, or the defendant at the time the bond was given. As each renewal note was given, the old note for the same amount was surrendered to the Foundry Company, and the interest on the new note either paid in advance by the Foundry Company or charged to the deposit account which it had in the bank, except as to the last three notes payable on demand, which by their terms were payable with interest. The bond was prepared by plaintiff's cashier from a form which he had used in other cases.

Plaintiff was nonsuited, upon the theory that the bond was intended to cover only such loans and discounts, or renewals thereof, as the bank should thereafter make to the Foundry Company and upon which it should furnish new money to the Foundry Company. This conclusion was reached by applying the principle of strictissimi juris to the construction of the bond in favor of the defendant as a surety.

We think that principle was carried too far in giving construction to this bond. The true rule seems to be, as stated in Ulster County Savings Institution v. Young, 161 N. Y. 23, 55 N. E. 483, that:

"Where the question is as to the interpretation and meaning of the language by which a party has bound himself, there is no difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been ascertained that the principle of strictissimi juris applies, and then it is that the courts guard the rights of the surety and protect him against a liability which is not strictly within the terms of his contract."

See, also, First National Bank of Waterloo v. Story, 163 App. Div. 279, 148 N. Y. Supp. 886.

What, then, was the intention of the parties as to the indebtedness or liability of the Foundry Company? No increase of the Foundry Company's line of discounts was in the contemplation of the parties; therefore it must have been intended that the bond should have some application to the already existing loans. The notes subsequently made, we think, the parties intended should be covered by the bond, even if it did not cover the notes already in existence. The notes now held by the bank should, we think, be held to be loans and discounts or renewals thereof, within the intent and meaning of the bond. We refer to the following cases as authorities tending to support such a construction of the bond: National Bank v. Thomas, 220 Pa. 360, 69 Atl. 813; Powers v. Clarke, 127 N. Y. 417, 28 N. E. 402; Peoria Savings Loan & Trust Co. v. Elder, 165 Ill. 55, 45 N. E. 1083; Australian Joint Stock Bank v. Bailey, L. R. (1899) App. Cas. 396.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.