■ COMMUNITY NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Appellant, v BENJAMIN COGNETTA, Respondent. — In an action against a surety, *inter alia,* upon his guarantee of payment of corporate obligations, plaintiff appeals from an order of the Supreme Court, Richmond County (Rubin, J.), dated September 2, 1981, which denied its motion for partial summary judgment on its first and third causes of action. Order modified, on the law, by granting partial summary judgment as to liability on the third cause of action. As so modified, order affirmed, without costs or disbursements. The assessment of damages with respect to the third cause of action, pursuant to CPLR 3212 (subd [c]), shall be deferred until, and held in conjunction with, the trial of the first two causes of action. The first cause of action is upon a guarantee of payment which was executed in connection with the sale by defendant of an automobile dealership and the continued extension of credit (called a "floor plan") to the purchaser by the plaintiff bank to be used for the purchase of inventory. While defendant Cognetta was the owner he had executed a blanket guarantee of the dealership's obligations to the bank. In connection with the sale, on February 22, 1978 Cognetta executed a new guarantee of payment which by its terms was unconditional. However, annexed to the guarantee was a letter of the same date from the bank to Cognetta, which the bank's attorney admits was intended to "[clarify] the precise nature of the obligation being assumed by defendant". The letter stated, in relevant part: "Personal Blanket guarantee will be terminated as of transfer date. You will execute a 'Guarantee of Wholesale Notes', this will limit your personal liability to the 'floor plan' only. The present floor plan will remain at $450,000.00. Said floor plan will be allocated to $400,000.00 for new vehicles and $50,000.00 for used. Your guarantee will be for a two year period expiring February 23, 1980." We construe the third above-quoted sentence ("The present floor plan will remain at $450,000.00") to be an assurance by the bank, intended to induce Cognetta to give his guarantee, that its net advances for the purchase of inventory under the "floor plan" would not exceed $450,000 (as to construction of the sentence to refer to net rather than gross credit, see Ann., 81 ALR 790, 792; Ann., 57 ALR2d 1209, § 1, at p 1210). It is the general rule that if the wording of a guarantee provides that the guarantor's undertaking is limited to a certain sum, such a specification of the maximum amount of the guarantee is indicative of an intention to limit the guarantor's liability and not to limit the amount of the net credit which the creditor may extend to the principal debtor as a condition of any liability on the part of the guarantor (see, e.g., *Powers v Clarke,* 127 NY 417; *Gates v McKee,* 13 NY 232; *McShane Co. v Padian,* 142 NY 207, 209; *Schinasi v Lane,* 118 App Div 76, affd 191 NY 545; see, also, Ann., 57 ALR2d 1209, 1211-1212). It is our view that the circumstances of this case warrant a departure from the general rule. Generally the wording of the guarantee is supplied by the guarantor and therefore ambiguities are resolved against him and in favor of the creditor who relied upon the ambiguous language to extend credit to the debtor (see *Gates v McKee, supra,* pp 235-237; *Powers v Clarke, supra,* p 424). Here, however, we have the exact opposite situation. The language of the letter was the bank's and it not only contained, in the second-quoted sentence, a limitation on the guarantor's liability, but in

the following sentence, a promise that the floor plan would "remain at $450,000.00". That subsequent sentence would be meaningless if it were not construed as a promise by the creditor not to extend net credit to the debtor in excess of the sum stated. Any ambiguity in the language should be resolved against the bank, which worded the limitation, and in favor of the defendant who relied upon it to extend his guarantee. Furthermore, the bank's promise was in writing and was annexed to the guarantee instrument itself (cf. *Franklin Nat. Bank v Skeist,* 49 AD2d 215). Although in at least one older case a court construed ambiguous language to be merely a limitation on liability upon the theory that as long as his liability was limited to a certain sum the guarantor could have no interest in restricting the amount of credit to be advanced by the creditor to the principal debtor (*Powers v Clarke, supra,* p 424), we disagree with that reasoning as applied to the facts of the instant case because the defendant may have indeed had a good reason for requiring the bank's promise to limit the credit it would extend to the buyer. Defendant may have feared that if the buyer contracted an indebtedness of more that $450,000 for inventory, the cost of carrying so large a loan would cause cash flow problems which would imperil the business and ultimately require the bank to resort to his guarantee (cf. *Farmers' & Mechanics' Bank of Mich. v Evans,* 4 Barb 487, 490). Thus the unusual surety agreement involved in the first cause of action contains mutual written promises. The defendant promised to guarantee payment of loans made by the bank to the buyer and the bank promised to limit those loans to a net total of $450,000. The defendant alleges and the bank denies that the latter materially breached its agreement by extending net credit in excess of the sum stated, thereby relieving him of liability on the contract. In light of this issue of fact, summary judgment was properly denied on the plaintiff's first cause of action. Defendant admits, with respect to plaintiff's third cause of action, that he guaranteed a loan which was actually made but not paid in full. He disputes the amount plaintiff alleged to be still outstanding. As liability is conceded, an assessment of damages shall be held pursuant to CPLR 3212 (subd [c]) in conjunction with the trial of the first two causes of action. Damiani, J. P., Lazer, Mangano, Niehoff and Rubin, JJ., concur.