THE ULSTER COUNTY SAVINGS INSTITUTION, Respondent, *v.* HORACE G. YOUNG, as Executor of, and Trustee under, the Will of THOMAS CORNELL, Deceased, Appellant, Impleaded, etc.

1. SURETY — CONSTRUCTION OF CONTRACT. While the liability of a surety is measured by his agreement, and is not to be extended by construction, his contract, however, is to be interpreted by the same rules which are applicable to the construction of other contracts; and the extent of his obligation must be determined from the language employed when read in the light of the circumstances surrounding the transaction.

2. ASCERTAINMENT OF INTENTION OF PARTIES PRECEDENT TO APPLICATION OF PRINCIPLE OF STRICTISSIMI JURIS. Where the question is as to the interpretation and meaning of the language by which a party has bound himself, there is no difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been ascertained that the principle of *strictissimi juris* applies, and then it is that the courts guard the rights of the surety and protect him against a liability which is not strictly within the terms of his contract.

3. OBLIGATION OF SURETY ON BOND OF SAVINGS BANK OFFICER. A bond given by the assistant treasurer of a savings bank on his original appointment, contained the following provision, after reciting the appointment and certain conditions: "And if the said M. T. T. shall well and truly, honestly and faithfully in all things serve the said institution in the capacity of assistant treasurer, as aforesaid, during his continuance in office, then the above obligation to be void, otherwise to remain in full force and virtue. It being understood that this bond is to be binding for all the time the said M. T. T. shall hold said office of assistant treasurer, even though he hold under successive appointments, but nothing herein shall prevent the sureties terminating their liability by giving at least two weeks' written notice of an intention so to do." *Held*, that the bond was intended by the parties as a continuing security during all the

time the principal should hold the office of assistant treasurer; and, hence, that a surety was liable for the principal's acts in that office when holding over, with the consent of the board of trustees and by virtue of his prior appointments, after the termination of the periods for which he had been appointed and reappointed.

4. CLAIM AGAINST DECEDENT'S ESTATE — SHORT STATUTE OF LIMITATIONS. To set running the six months' limitation, provided by section 1822 of the Code of Civil Procedure, against an action to recover a rejected claim against a decedent's estate, there must have been a written claim exhibited to the executor or administrator, and absolutely rejected by him.

*Ulster County Sav. Inst.* v. *Young*, 15 App. Div. 181, affirmed.

(Argued October 23, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department entered March 17, 1897, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court, and an order denying a motion for a new trial.

This action was brought to recover the sum of $15,000 and interest, the penalty in a bond given by Matthew T. Trumpbour, with the defendant's testator, Thomas Cornell, as surety for the faithful performance by Trumbour of the duties of assistant treasurer of the plaintiff.

The facts, so far as material, are stated in the opinion.

*A. T. Clearwater* for appellant. The words in the bond "even though he holds under successive appointments" are words of limitation and exclusion. (*K. M. Ins. Co.* v. *Clark*, 33 Barb. 197; *Holmes* v. *Hubbard*, 60 N. Y. 183; *Munroe* v. *Allaire*, 2 Caines, 320; *Platt* v. *Lott*, 17 N. Y. 478; *Turner* v. *Jaycox*, 40 N. Y. 470; *Moore* v. *Griffin*, 22 Me. 350; *L. & W. C. R. R. Co.* v. *Elwell*, 8 Allen, 371.) It is a fundamental principle of law that the contract of a surety is always *strictissimi juris*. It cannot be extended to any other subject or to any other person, or to any other period of time than that specifically expressed in it. (*H. M. L. Ins. Co.* v. *Lowenberg*, 120 N. Y. 44; *Jennery* v. *Olmstead*, 90 N. Y. 363; *Nat. M. B. Assn.* v. *Conkling*, 90 N. Y. 116; *Ward* v. *Stahl*, 81 N. Y. 406; *Barnes* v. *Barrow*, 61 N. Y.

42; *Cornell* v. *Eagan*, 5 N. Y. S. R. 1; *Ludlow* v. *Simmons*, 2 Caines Cas. 1; *Crist* v. *Burlingame*, 62 Barb. 351; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *Gates* v. *McKee*, 13 N. Y. 232.) Cornell, the surety, having died during the lifetime of Trumpbour, the principal, no recovery can be had against his executor. (*Getty* v. *Binsse*, 49 N. Y. 385; *Hauck* v. *Craighead*, 67 N. Y. 432; *Riseley* v. *Brown*, 67 N. Y. 160; *Wood* v. *Fisk*, 63 N. Y. 245; *U. S.* v. *Pierce*, 9 How. [U. S.] 91.) The action is barred by the Statute of Limitations. (Code Civ. Pro. § 1822; *Titus* v. *Poole*, 145 N.Y. 414; *Peters* v. *Stuart*, 21 N. Y. Supp. 993; *Butler* v. *Johnson*, 111 N. Y. 212; *Wintermeyer* v. *Sherwood*, 77 Hun, 193; *Snell* v. *Dale*, 43 N. Y. S. R. 498; *Tucker* v. *Tucker*, 4 Keyes, 149; *Cooper* v. *Felter*, 6 Lans. 485; *Selover* v. *Coe*, 63 N. Y. 438.) The bond was never accepted by the plaintiff. (*Realty* v. *M. Ins. Co.*, 2 Johns. 114.) The ruling of the trial judge excluding the reports made by the plaintiff's trustees to the superintendent of the state banking department, was error. (*C. Nat. Bank* v. *Nat. Bank*, 50 N. Y. 575; *Trustees of Brookhaven* v. *Smith*, 118 N. Y. 634; *M. & T. Bank* v. *Hazard*, 30 N. Y. 226; *Thompson* v. *Simpson*, 128 N. Y. 270; *Carpenter* v. *G. A. Ins. Co.*, 135 N. Y. 298.) The allowance of interest was error. (Code Civ. Pro. § 1915.)

*Albert Cardozo, Jr.*, and *Benjamin N. Cardozo* for Nellie L. Carpenter, intervening. The liability of the sureties terminated in July, 1870, when the trustees of the plaintiff failed, at their annual meeting, to reappoint the defendant Trumpbour to the office of assistant treasurer. (*N. M. B. Assn.* v. *Conkling*, 90 N. Y. 121; *K. M. Ins. Co.* v. *Clark*, 33 Barb. 196; *Overacre* v. *Garrett*, 5 Lans. 156; *U. C. S. Inst.* v. *Ostrander*, 15 App. Div. 173; *Bissell* v. *Saxton*, 66 N. Y. 60; *Kellum* v. *Clark*, 97 N. Y. 390; *Arlington* v. *Merricke*, 2 Sandf. 411; *L. W. Co.* v. *Atkinson*, 6 East, 507; *Wardens, etc.*, v. *Bastock*, 2 B. & P. [N. R.] 175; *Leadley* v. *Evans*, 2 Bing. 32; *Peppin* v. *Cooper*, 2 B. & Ald. 431; *Bamford* v. *Iles*, 3 W. H. & G. 380; *Kitson* v. *Julian*, 4 El. & B. 854.)

4

The plaintiff's claim is barred by the short Statute of Limitations applicable to claims against the estate of a decedent. (Code Civ. Pro. § 2718; *Gansevoort* v. *Nelson*, 6 Hill, 389; *Russell* v. *Lane*, 1 Barb. 519; *Titus* v. *Poole*, 145 N. Y. 414; *Matter of Sears*, N. Y. L. J., June 6, 1891; *Peters* v. *Stewart*, 2 Misc. Rep. 357; *Hoyt* v. *Bonnett*, 50 N. Y. 538.) The court erred in refusing to admit in evidence the semi-annual reports made by the plaintiff to the superintendent of banking. (L. 1882, ch. 409, § 279; *E., etc., Co.* v. *Avery*, 83 N. Y. 31; *Macullar* v. *McKinley*, 99 N. Y. 353; *Morse* v. *Swits*, 19 How. Pr. 275; *Parsons* v. *Johnson*, 28 App. Div. 1; *Hadcock* v. *Osmer*, 153 N. Y. 604; *Kramer* v. *Bjerrum*, 19 App. Div. 332; *Dezell* v. *Odell*, 3 Hill, 215; *Cutting* v. *Marlor*, 78 N. Y. 454; *Preston* v. *Prather*, 137 U. S. 604; *Hun* v. *Cary*, 82 N. Y. 65.)

*J. Newton Fiero* and *Severyn B. Sharpe* for respondent. The evidence of Trumpbour's defalcation is conclusive. (2 P. & W. [Penn.] 27.) The exception taken to the admission of the bond in evidence is not available, since it was sufficiently proven. (*Prall* v. *L. A. Socy.*, 5 Daly, 298; *Sawyer* v. *Warner*, 15 Barb. 285; *Bank of U. S.*, 12 Wheat. 64; *Bostwick* v. *Van Voorhis*, 91 N. Y. 353.) There is no force in the contention that the plaintiff cannot recover against the executor of Cornell, by reason of the fact that Trumpbour was originally a party to the action, and that his representatives are not joined, or his or their insolvency not shown. (Code Civ. Pro. §§ 454, 758; *Douglass* v. *Ferris*, 138 N. Y. 192; *McIntosh* v. *Ensign*, 28 N. Y. 169; *Stedeker* v. *Hernard*, 102 N. Y. 327.) The rule that a surety is never to be implicated beyond his specific agreement, and that his liability is always *strictissimi juris* and must not be extended by construction, in nowise aids the defendant. (*Gates* v. *McKee*, 13 N. Y. 232; *Bennett* v. *Draper*, 139 N. Y. 266; *U. D. S. Bank* v. *Feltz*, 25 Abb. [N. C.] 357.) By the terms and condition of the bond it was to continue in force so long as Trumpbour continued to discharge the duties of

assistant treasurer, and was in no way affected by his reappointment or continuance in that office. (*Harrington* v. *F. Nat. Bank*, 1 T. & C. 361; *Angero* v. *Keen*, 6 M. & W. 390; *C. Ins. Co.* v. *Æ. Ins. Co.*, 138 N. Y. 16; *Westervelt* v. *Mohrenstecher*, 76 Fed. Rep. 118; *A. Bank* v. *Root*, 2 Metc. 522; *Dedham Bank* v. *Chickering*, 3 Pick. 335; *F. Nat. Bank* v. *Spinney*, 120 N. Y. 560; *Oswald* v. *Mayor of Berwick*, 5 H. L. Cas. 856; *Stevens* v. *Orton*, 18 Misc. Rep. 539; *Elam* v. *Comcl. Bank*, 86 Va. 92.) The bond being a sealed instrument is not affected by either the six or ten-year Statute of Limitation, and as to the twenty-year statute no claim is made for any loss to the bank occurring after August 1, 1887, or before August 1, 1873. (*King* v. *Mackellar*, 109 N. Y. 216.) The claim was never disputed or rejected under the statute so as to bring it within the short Statute of Limitations, since it was never "exhibited" to the executor as required by law before that statute can begin to run. (*Elliot* v. *Cronk*, 13 Wend. 35; *Broderick* v. *Smith*, 3 Lans. 26; *Nat. Bank* v. *Speight*, 47 N. Y. 668; *Hoyt* v. *Bonnett*, 50 N. Y. 442; *King* v. *Todd*, 27 Abb. [N. C.] 149; *Matter of Morton*, 7 Misc. Rep. 343; *Niles* v. *Crocker*, 88 Hun, 312.) No obligation rested on plaintiff to give information to Cornell as to Trumpbour's defalcation. This was in fact impossible, as it appears that plaintiff had no knowledge of any wrongdoing on Trumpbour's part until about the time of his discharge. The doctrine of equitable estoppel does not apply, and it was not error to exclude the reports made to the banking department. (*A. D. Church* v. *Vedder*, 14 Wend. 165; *U. S.* v. *Kirkpatrick*, 9 Wheat. 720; *Bd. Suprs.* v. *Otis*, 62 N. Y. 88; *Bostwick* v. *Van Voorhis*, 91 N. Y. 353; *A. & P. T. Co.* v. *Barnes*, 64 N. Y. 385; *Jones* v. *U. S.*, 18 Wall. 662; *H. M. Co.* v. *Farrington*, 82 N. Y. 121.) It was proper for the court to award interest on the bond from the date of the commencement of the action. (*Brainerd* v. *Jones*, 18 N. Y. 35; *Hood* v. *Hayward*, 124 N. Y. 23; *Beers* v. *Shannon*, 73 N. Y. 304.)

MARTIN, J.   The plaintiff is a savings bank incorporated by chapter 152, Laws 1851, and acts amendatory thereof, and since its organization has transacted its business at Kingston, N. Y.

The statute under which the plaintiff was organized conferred upon its board of trustees the power to make and establish such by-laws, rules and regulations as they should judge proper for the election of their officers, for prescribing their functions and the mode of discharging the same, and also provided that the board might appoint such subordinate officers and agents of the corporation as they might deem necessary, who should respectively give such security for their fidelity and good conduct as the board of trustees might, from time to time, require.   (Laws 1851, ch. 152.)

In pursuance of the authority conferred upon them by statute, the board of trustees established a by-law providing for the election of a secretary, treasurer and such other officers and assistants as they might deem necessary to be employed in the institution, which appointments should be held at the pleasure of the board.

On July 16, 1867, Matthew T. Trumpbour was elected assistant treasurer of the plaintiff for the ensuing year.   On the twenty-first day of July, 1868, he was again elected for a year, and July 20, 1869, he was a second time re-elected for the ensuing year.   Although the plaintiff's board of trustees held an annual meeting each year thereafter, he was never again re-elected or reappointed, but continued to act as such assistant treasurer, with the consent of the board, until 1891.

After Trumpbour's first election, in compliance with a resolution of the board of trustees requiring it, he gave the bond in suit, which was in the penal sum of fifteen thousand dollars, and the defendant's testator was a surety thereon.   After reciting the facts that Trumpbour had been appointed assistant treasurer of the plaintiff, and that by virtue of his office he would handle its money and securities, the bond contained the following condition : " If the above-bounden Matthew T. Trumpbour, his executors or administrators, shall, at the

expiration of his said office, or at any time on request to him or them, make or give unto the said institution, or its agent or its attorney, a just, full and true account of all such money or securities or other property as may have come in his hands, charge or possession as such assistant treasurer as aforesaid, and shall and do pay and deliver over to his successor in office, or any other person duly authorized to receive the same, all such sums of money, securities or other property as may appear to be due and owing by him to said institution; and if the said Matthew T. Trumpbour shall well and truly, honestly and faithfully in all things serve the said institution in the capacity of assistant treasurer, as aforesaid, during his continuance in office, then the above obligation to be void, otherwise to remain in full force and virtue. It being understood that this bond is to be binding for all the time the said Matthew T. Trumpbour shall hold said office of assistant treasurer, even though he hold under successive appointments, but nothing herein shall prevent the sureties terminating their liability by giving at least two weeks' written notice of an intention so to do."

The first and an important question in this case relates to the interpretation of this bond. Its conditions are twofold: 1. That the principal obligor shall account and pay over to his successor in office or any other person authorized to receive the same, all money or securities due or owing the institution; and, 2. That he shall faithfully and honestly serve the plaintiff in the capacity of assistant treasurer.

That the principal did not honestly serve in his position as assistant treasurer is admitted by all. His defalcations and wrongful acts were, however, after the expiration of the terms specified in his several appointments, and while he held over, with the consent of the board, under and by virtue of them. Thus, the question presented is whether his sureties are liable for the acts of their principal after the termination of the periods for which he was appointed. This question depends for its solution upon the construction of the provisions of the bond.

The liability of a surety is measured by his agreement, and is not to be extended by construction. His contract, however, is to be interpreted by the same rules which are applicable to the construction of other contracts. The extent of his obligation must be determined from the language employed when read in the light of the circumstances surrounding the transaction. Hence, where the question is as to the interpretation and meaning of the language by which a party has bound himself, there is no difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been thus ascertained that the principle of *strictissimi juris* applies, and then it is that the courts guard the rights of the surety and protect him against a liability which is not strictly within the terms of his contract. (*Nat. Mech. Banking Assn.* v. *Conkling*, 90 N. Y. 116, 121 ; *Smith* v. *Molleson*, 148 N. Y. 241.)

Under this rule of construction we must examine the bond in suit in the light of the facts and circumstances surrounding the parties, and thus determine their intent as indicated by a fair and reasonable construction of the language employed.

The condition of the bond, so far as the question under consideration is concerned, is : " If the said Matthew T. Trumpbour shall well and truly, honestly and faithfully in all things serve the said institution in the capacity of assistant treasurer, as aforesaid, during his continuance in office, then the above obligation to be void, otherwise to remain in full force and virtue. It being understood that this bond is to be binding for all the time the said Matthew T. Trumpbour shall hold said office of assistant treasurer, even though he hold under successive appointments, but nothing herein shall prevent the sureties terminating their liability by giving at least two weeks' written notice of an intention so to do."

The claim of the appellant is that the words " as aforesaid " contained in the first sentence of this condition, relate to the term of the treasurer's service under the appointment mentioned in the preceding portion of the bond, and, conse-

quently, the provision that immediately follows is limited to the period for which the appointment was made.

On the other hand, the respondent insists that the words " as aforesaid " relate only to and were intended to describe the character of the position the treasurer occupied, and should be construed as though this provision had read, " he shall well and truly, honestly and faithfully in all things serve the said institution in the capacity of assistant treasurer of the Ulster County Savings Institution during his continuance in office." In other words, the respondent's claim is that the words " as aforesaid " refer to the office and do not relate to the period of service. We think the construction contended for by the respondent is correct and should be adopted.

If there was any doubt as to the proper construction of the sentence under consideration, it is dispelled by the sentence following, which, in plain and unequivocal terms, declares that the understanding of the parties was that the bond was to be binding for all the time that Trumpbour should hold the office of assistant treasurer, even if he held it under successive appointments, and then provides that nothing therein should prevent the sureties from terminating their liability by giving two weeks' notice of their intention to do so. This provision shows plainly that the bond, when executed by the sureties, was intended as a continuing security during all the time he should hold the office, even if held under successive appointments.

The contention of the appellant that the language, for all the time he should hold such office, is restricted and limited by the words " even though he holds under successive appointments," cannot, we think, be sustained. We find nothing in that language which discloses an intention to limit the application of the bond to a period of service held only under original or successive appointments. The language is for all the time he shall hold such office, and that language is not, we think, restricted by the sentence which follows. The words " even though he holds under successive appointments," are not to be regarded as words of exclusion or limitation,

but were employed to add to or extend the original provision which immediately preceded them.    Their obvious purpose was to emphasize and strengthen the original provision, and their intended meaning was that the bond should apply not only to the appointment already made and any holding over that might arise under it, but also in case of a new and subsequent appointment.

When this whole instrument is read together, and its purpose and the circumstances under which it was given are considered, we think this is the proper and reasonable construction of its provisions, and the one which should obtain.    It is quite clear that such was the purpose and intent of the parties when the bond was required and given.    If we are correct in this conclusion, it then follows that the acts of the treasurer were a breach of the conditions of this bond and clearly within its purview and purpose.

The only other question we deem it necessary to consider is whether this action was barred by the short Statute of Limitations.    Section 1822 of the Code of Civil Procedure provides, " Where an executor or administrator disputes or rejects a claim against the estate of a decedent, exhibited to him either before or after the commencement, of the publication of a notice requiring the presentation of claims, as prescribed by law,    *    *    *    the claimant must commence an action, for the recovery thereof against the executor or administrator, within six months after the dispute or rejection;    *    *    *    in default whereof, he, and all the persons claiming under him, are forever barred from maintaining such an action thereupon, and from every other remedy to enforce payment thereof out of the decedent's property."

There is no pretense that any claim in writing was ever made or exhibited to the executor, or that there was a rejection of any such claim by him.    The only proof of any demand upon the defendant Young, or upon any person claiming to represent him, was sought to be established by Judge Schoonmaker's register, which contained the following entry : " April 11, 1892, demand made on executor Young per Dimmick,"

and by the testimony of Henry C. Soop to the effect that Judge Schoonmaker made a claim for the amount of the bond in suit upon him orally, which he, as attorney for Young, refused to pay.

Without considering the other questions urged against the propriety of the proof as to the presentation of the claim and the validity of its rejection, the question whether the verbal rejection by an executor of an oral claim is sufficient to establish the time from which the short Statute of Limitations commenced to run remains to be determined. That statute is penal in its character and should be strictly construed. To entitle a personal representative to the benefit of it, the statute must be complied with in all its essential particulars. (*Hoyt* v. *Bonnett*, 50 N. Y. 538.)

An examination of the statute discloses that its provisions are that, where an executor or administrator disputes or rejects a claim against the estate of a decedent *exhibited to him,* an action therefor must be commenced within six months thereafter. It is difficult to understand how an oral claim could be exhibited to a personal representative. From these words the necessary implication arises that the claim is to be presented in writing. We think, before this statute can be invoked by a representative as a bar to a claim against the estate he represents, a notice requiring the presentation of claims must be published, a claim in writing must be presented to the executor or administrator, and it must be plainly disputed or rejected by him.

The almost universal practice in presenting claims to representatives of an estate, to public officers or public boards, whether executors, administrators, assignees, receivers, supervisors, aldermen or auditors, has been to present them in writing, properly verified by the claimant. In many of the instances mentioned, this is specially required. In this case there is no such explicit requirement, but the language of the statute clearly indicates that the claim exhibited must be in writing. Public policy and certainty in the administration of estates also require the enforcement of that rule. Otherwise

the opportunity is at once presented for an unscrupulous or dishonest representative to claim the benefit of this statute from some uncertain and inconclusive talk in regard to a claim against the estate, which upon a trial may be transformed into an absolute demand and refusal, by perjury or a mistaken remembrance of the facts. In a matter so important, we think nothing short of a written claim exhibited to the representative, as the statute plainly requires, and absolutely rejected by him, will have the effect of establishing the time for the commencement of the limitation provided by this statute.

In *Matter of Morton* (58 N. Y. S. R. 515, 517) it was said : " The statute plainly intends that the claim shall be presented or exhibited in some writing, stating its nature and amount, the owner's name and demanding its payment. The personal representative of the estate is then in possession of information which will enable him to act intelligently, and either to admit the claim or take such steps to protect the estate against it as he shall deem prudent and necessary." The following cases are to the same effect : *Cruikshank* v. *Cruikshank* (9 How. Pr. 350, 351) ; *King* v. *Todd* (27 Abb. [N. C.] 149) ; *Robert* v. *Ditmas* (7 Wend. 523) ; *Gansevoort* v. *Nelson* (6 Hill, 392) ; *Niles* v. *Crocker* (88 Hun, 312).

While there is some conflict in the courts below upon this question, we think the cases to which we have referred establish a correct principle which should be adopted by this court. The appellant in his brief has called our attention to several other questions which have been examined and considered by us, without finding any which would justify a reversal or that require special consideration.

The judgment should be affirmed, with costs.

Bartlett, J. (dissenting). I am of opinion that, under the principle of *strictissimi juris*, the surety is not liable within the precise terms of his contract.

I do not think full force and effect is given, in the prevailing opinion, to the words, " It being understood that this bond

is to be binding for all the time that said Matthew T. Trumpbour shall hold said office of assistant treasurer, even though he hold under successive appointments.    *    *    *" These are words of exclusion and limitation, and the surety in effect says, "A new bond is not necessary on the expiration of the first appointment for one year, as I make myself liable under successive appointments."

The fact is, that there were two successive appointments, and no more, upon which this provision operated.

The imposition of additional liability on the surety is to extend it by construction beyond his specific engagement.

I vote for reversal.

All concur with MARTIN, J., for affirmance, except PARKER, Ch. J., not sitting, and BARTLETT, J., who reads dissenting memorandum.

Judgment affirmed.