CENTRAL BANK OF ROCHESTER v. KIMBALL et al.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

1. DEMAND NOTE—MATURITY—NECESSITY OF DEMAND.

The maturity of a note payable on demand is not suspended till the making of a demand for payment.

2. GUARANTY—LACHES—EXECUTORS.

A demand note executed by an investment company to a bank on March 25, 1895, was embraced in a guaranty of the paper of the investment company. The note and other similar notes were given for land transferred by the bank to the investment company, and there was an understanding that the investment company should have time to dispose of the land, and pay the notes from the proceeds; and such agreement was carried out as to other notes. The guarantor died on April 13, 1895. The business continued without objection on the part of his execu-

tors, though they had full knowledge of the facts, and interest was paid on the notes to July, 1900, and the investment company disposed of the property in the proper manner. No demand of payment was made till shortly before the commencement of suit on the guaranty against the executor in January, 1901. *Held* not a sufficient showing of laches to constitute a defense to the action.

Appeal from trial term, Monroe county.

Action on a guaranty by the Central Bank of Rochester against Laura M. Kimball and others, as executors of William Kimball, deceased. From a judgment for plaintiff (75 N. Y. Supp. 1122), defendants appeal. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, and HIS-COCK, JJ.

Walter S. Hubbell, for appellants.

John B. Bowman, for respondent.

HISCOCK, J. This action was brought by the plaintiff, as the assignee of the Union Bank of Rochester, to recover the unpaid balance of a certain note for $50,000 and interest, executed by the Union Investment Company upon and under a certain guaranty executed by the defendants' testator and others. The principal question litigated upon the trial and argued in this court was and is whether the holder of said note was not so guilty of laches, in not seeking more promptly to collect the same from the maker thereof, as to release defendants' testator upon his guaranty, which is practically conceded to have been one of collection of said and other notes. The learned trial justice reached the conclusion that there had not been such laches as to release said guarantor, and we think his decision upon that and the other questions involved should be affirmed. Prior to 1895 the Union Bank of Rochester, presumably through unfortunate or uncollectible loans, had become burdened with an excessive amount of real estate. The bank department criticised its management therefor, and insisted that its holdings of such property should in some manner be disposed of. Thereupon defendants' testator, who was president of the bank, and the holder of some stock therein, and from other men, who, with him, were managers of the bank, organized what was known as the Union Investment Company, with a capital of $10,000. The object of the organization of this latter company was to take over from said bank its excessive real estate, there being given therefor the money paid in for the capital stock of the investment company and the notes of the latter, which could then be carried in the assets of the bank in the place of said real estate. This process continued for some time, when the bank department again criticised said bank, insisting, in substance, that the notes of said investment company must either be paid or secured. Thereupon the guaranty in question was executed by Mr. Kimball and two of his associates in said bank and said investment company, Gilman H. and Erickson Perkins. This instrument was executed February 11, 1895, and read as follows:

"For value received, we, the undersigned, severally and jointly guaranty the Union Bank of Rochester against any loss whatever by reason of any ad-

vances now made by it, or which may hereafter be made by it, to the Union Investment Company, or by reason of any paper now discounted, or which may hereafter be discounted, by said bank for said company.

"Gilman H. Perkins.
"Erickson Perkins.
"William S. Kimball."

After the execution of said instrument other notes seem to have been executed by said investment company, and March 25, 1895, the one involved in this suit was made, executed, and delivered by it to said bank. Said note bore date on that day, and was for the sum of $50,0co, payable to said bank on demand, with interest. The proceeds of said note, when discounted, were used, in whole or part, by said investment company to pay for and take over some real estate held by the bank as some sort of security. Almost immediately after the execution and discount of said note Mr. Kimball died, and thereafter, and on or about April 13, 1895, his will was admitted to probate, appointing the defendants executrix and executor, respectively, and they forthwith qualified, and entered upon the discharge of their duties as such. On or about October 26, 1899, the Union Bank sold and assigned to the plaintiff said note and guaranty in question. The interest upon the note was paid semiannually down to July, 1900. No formal demand for its payment was ever made until shortly before the commencement of action thereon by the plaintiff, which seems to have been in January, 1901. As a result of that action, judgment was obtained and execution issued against the maker of the note, which was returned unsatisfied. On or about May 25, 1896, the bank caused to be served upon the defendants, as executors of Mr. Kimball, a proof of claim, which has been treated as covering and including the note in question. Independent of that, upon at least two occasions, one of them as early as July 13, 1897, one of the executors made an examination of the liabilities and assets of the Union Bank, and saw the note and guaranty in question. The second examination was about a year later.

Independent of the general features disclosed by the foregoing facts, one of the witnesses testified that at some of the consultations respecting the formation of the investment company at which Mr. Kimball was present, it was talked or understood that "the investment company was to have all the time necessary to dispose of the real estate to the best advantage, and, after it was disposed of, the proceeds were to be applied upon these notes held by the bank; that is, the investment company was to pay its indebtedness to the bank." The trial court made a finding of fact substantially in accordance with this testimony. There was no evidence to indicate that, as matter of fact, as distinguished from presumption of law, the guarantors suffered any actual damage through failure to proceed sooner upon the note in question. While at the time the note was made the investment company did have property, and at the time the execution was issued did not have any, it is to be remembered that the bank held a large amount of other indebtedness against the investment company, for which the guarantors were liable; and it appears that from time to time as property was sold by the debtor the proceeds thereof were applied upon such indebtedness. Five thousand dollars had been

thus paid upon. the principal of the note in question prior to its assignment to the plaintiff. Upon these facts, and others less prominent, the learned counsel for the appellants has argued with much force and ability that, as matter of law, there was such delay and laches in failing to enforce the note under consideration as to bar plaintiff from any recovery thereon. He has also contended, in substance, that the investment company was identical with the Union Bank, and that there was no valid consideration, as between the bank and Mr. Kimball, for the guaranty by the latter of the indebtedness of the investment company. Our conclusion that the latter contention cannot be sustained is not attended by any doubt. While the people who formed and were interested in the investment company were all managers and stockholders in the bank, it does not at all appear that all of the stockholders of the bank were interested in the investment company. The two corporations had entirely complete and distinct organizations. Whether we regard simply the money which it received upon the discount of the note in question or the property which it obtained with such proceeds, the investment company received from the bank property which formed a valid consideration for the note, and also a valid consideration for the guaranty by Mr. Kimball that the bank should be saved harmless in the transaction. While there is no doubt that he was acting in part for the benefit of the bank, still the entire plan contemplated the surrender by the bank of the property of its stockholders to another corporation, in which he and some of his associates were interested, and in which we are to assume various stockholders of the bank were not interested. All of the elements were present which would form a valid and legal foundation for the contract which he made with the bank, and through it with its stockholders, that, if it would pass its property over to the investment company, and take the latter's notes therefor, he would save it harmless. We readily pass, therefore, to the consideration of the first, and more debatable, question, above stated.

It is conceded, or at least not disputed, by the counsel for the respondent, that the instrument executed by Mr. Kimball was a guaranty of collection. We think it also must be held, in accordance with the argument of appellants against those of respondent, that the note in question, although payable upon demand, cannot be regarded as not becoming due until a formal demand was made. We regard it as settled that no formal demand of payment was necessary to make the note due as against the maker, and that it cannot be regarded as having lain without dishonor until a formal demand was made in 1901. Herrick v. Woolverton, 41 N. Y. 581, 1 Am. St. Rep. 461; Wheeler v. Warner, 47 N. Y. 519, 7 Am. Rep. 478; McMullen. v. Rafferty, 89 N. Y. 456. This brings us to the precise question whether there was inexcusable laches in proceeding upon the note, within the doctrine of Craig v. Parkis, 40 N. Y. 181, 100 Am. Dec. 469, and other cases cited by the appellants, or whether, under all of the circumstances, the holder of the note lived up to its legal obligations with the guarantors. The rule by which to measure these obligations and the correlative liability of a surety

is well laid down in Savings Inst. v. Young, 161 N. Y. 23, 30, 55 N. E. 483, 484, where it is said:

"The liability of a surety is measured by his agreement, and is not to be extended by construction. His contract, however, is to be interpreted by the same rules which are applicable to the construction of other contracts. The extent of his obligation must be determined from the language employed when read in the light of the circumstances surrounding the transaction. Hence, where the question is as to the interpretation and meaning of the language by which a party has bound himself, there is no difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been thus ascertained that the principle of strictissimi juris applies, and then it is that the courts guard the rights of the surety, and protect him against a liability which is not strictly within the terms of his contract."

The law by implication read into the contract of guaranty executed by Mr. Kimball the provision that, before he became liable upon such guaranty for any debts of the investment company, reasonable diligence should be exercised to collect them of the debtor. Within the authority just quoted, we are to determine, in the light of all the circumstances which appear in this case, what reasonable diligence the collection of the note in question involved. We think those circumstances prohibit the view that the holder of the note was to proceed for its collection against the maker with such speed and within such limit of time as would be, beyond question, ordinarily required. We think upon the other hand that at the time the guaranty and note were respectively executed it was the assumption and expectation upon the part of all concerned that just the policy would be pursued which seems to have been followed, of allowing the notes to lie while the investment company endeavored to dispose of its real estate and pay them. The entire plan adopted by the various parties contemplated such a line of action, and otherwise was useless. The bank department at first criticised the holding by the bank of so much real estate, and then criticised the holding by the bank of the notes of the investment company, and the failure to push the same to collection. The only way in which these matters could be immediately cleared up was by a sale of the real estate to outsiders, and that, doubtless, involved a large sacrifice. Hence the formation of the investment company to take the real estate, and give the notes and the guaranty by Mr. Kimball and his associates of the notes, in order to appease the bank department, and secure delay in their enforcement. Moreover, the guaranty was a continuing one. If we should assume that the bank was bound within what would ordinarily be a reasonable time to insist upon payment of the note made by the investment company, it had a perfect right, under the terms of the guaranty, to take such payment in the form of a renewal note, and of again renewing that indefinitely. It would be idle to hold that Mr. Kimball had the right to insist that the bank must proceed with the immediate collection of a note, or else lose his responsibility as a guarantor, when at the same time he left with it the power and right to escape such results by indefinitely extending and renewing such note.

Proof that it was the expectation and plan of all the parties that

these notes should be carried along pending the disposition by the investment company of the real estate, does not by any means find its sole or main support in the testimony of the witness Perkins in regard to what was said upon that line when the investment company was formed, and which the counsel for the appellant criticises. The sole and only apparent purpose of the organization of the investment company and of the guaranty of its notes was to devise some method of carrying along without criticism the real estate which had been acquired by the bank until the same could be disposed of and the proceeds paid over. The entire purpose was through the medium of the auxiliary company to convert the bank's real estate into cash, and in the meantime to carry some substitute for this asset of the bank upon its books in some form which would be satisfactory to the bank department. It all involved the theory of delay in carrying the notes of the investment company until the real estate could be sold, and the former paid up. Mr. Kimball, as the president of the bank, and one of the organizers of the investment company, must necessarily be assumed to have known and contemplated this when he made his guaranty. It does not appear that this course was deviated from, or that either the original bank or its assignee, the plaintiff, unreasonably or neglectfully failed to pursue this line of action. There is no evidence that either before or after Mr. Kimball's death the property taken by the investment company was dissipated, misappropriated, or squandered. Upon the other hand, it does appear from the evidence that from time to time down to the year 1901 the investment company disposed of its assets, and paid the proceeds thereof in to the Union Bank. Not only was the interest paid upon this particular note up to within six months of the time when action was commenced, but prior to its assignment to plaintiff, as hereinbefore stated, $5,000 had been paid upon its principal.

The query may possibly suggest itself whether the legal relations and obligations of the various parties in respect of this note were changed by the death of Mr. Kimball immediately after it was executed. His death, which terminated his presidency of the bank, also terminated the power of the latter to take new notes under his guaranty; which, as already suggested, is one of the ways in which it might have unquestionably extended the time of payment. It has not been, but perhaps may be, urged that the effect of such death was to terminate the course of procedure which we have held theretofore to have been permissible to the holder of this note, and to have placed upon it thenceforth the obligation of proceeding with the diligence which would ordinarily be required as against a guaranty of collection. We do not believe, however, that such argument could prevail. We think that the relations between the bank and defendant's testator are to be governed by the circumstances which existed at the time the contractual relations evidenced by the guaranty and note accrued. If we are right in our views, those circumstances at that time authorized the assumption upon the part of the bank that it was to give the investment company time in which to sell the real estate and pay the note. While Mr. Kim-

ball's death necessarily prevented some things, such as the taking of new notes in renewal of old ones, we believe it did not change the rights of the holder of the old ones as those rights existed before his death. His executors assumed his place as guarantor, and the obligations which went therewith. They knew of this note within about a year after their appointment. If they, for any reason, had desired or deemed it wise to have a different course pursued from that which prevailed during the lifetime of their testator, they could doubtless have enforced such policy by proper notice to the bank. While it was not necessary for them to take any step in response to the notice of claim upon this and other notes served upon them by the bank, their failure so to do taken in connection with their other knowledge of the existence of this note, and that it was being carried by the bank, does strongly indicate an acquiescence in and approval by them of the course which prevailed before their appointment. We think, therefore, upon this point, that the bank had the right to continue its course of dealing with the investment company which had been established during the life of the original guarantor, his executors and representatives, with knowledge of the indebtedness, making no objection thereto. Under all the circumstances, therefore, we think that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.