CENTRAL BANK OF ROCHESTER, Respondent, *v.* LAURA M. KIMBALL and HAROLD C. KIMBALL, as Executors, etc., of WILLIAM S. KIMBALL, Deceased, Appellants, Impleaded with Others.

*Guaranty of a note payable on demand with interest — consideration therefor — whether laches exist in its collection is to be determined by the circumstances of the particular case — acquiescence in the delay on the part of the executors of a deceased guarantor.*

The Banking Department having criticised the action of the Union Bank of Rochester in holding an excessive amount of real estate, the president and a number of stockholders of the bank organized a corporation known as the Union Investment Company, which took over the real estate of the bank and paid the bank therefor $10,000 in money and the balance in promissory notes. Subsequently the Banking Department insisted that the notes of the investment company should either be paid or secured, whereupon, on February 11, 1895, the president of the bank and two of his associates executed an instrument by which they severally and jointly guaranteed the bank "against any loss whatever by reason of any advances now made by it, or which may hereafter be made by it, to the Union Investment Company, or by reason of any paper now discounted, or which may hereafter be discounted, by said bank for said company."

Thereafter, under date of March 25, 1895, the investment company executed to the bank a note for $50,000, payable on demand, with interest, and shortly thereafter the president of the bank died, his will being admitted to probate April 12, 1895. May 25, 1896, the bank served upon the executors of the deceased president a proof of claim, including the note in question, and on two occasions, one in 1897 and the other in 1898, one of the executors of the deceased president made an examination of the affairs of the bank and saw the note and guaranty.

October 26, 1899, after $5,000 had been paid upon the principal of the note, the Union Bank sold and assigned the note and guaranty to the Central Bank of Rochester. Interest upon the note was paid semi-annually down to July, 1900. No demand for the payment of the note was ever made until shortly

prior to January, 1901, at which time the Central Bank brought an action to recover upon the note. In that action a judgment was obtained against the investment company and an execution issued thereon, which was returned unsatisfied.

In an action thereafter brought by the Central Bank to recover upon the guaranty it appeared that, when the investment company was organized, it was understood that it "was to have all the time necessary to dispose of the real estate to the best advantage, and after it was disposed of the proceeds were to be applied upon these notes held by the bank; that is, the Investment Company was to pay its indebtedness to the bank." There was no evidence that the guarantors had suffered any actual damage from the failure to proceed sooner against the investment company upon the note.

*Held,* that, as between the bank and the deceased president, there was a valid consideration for the guaranty;

That, while no formal demand of payment was necessary to make the note due as against the maker, and it could not be regarded as having lain without dishonor until a formal demand was made in 1901, the failure of the plaintiff to proceed upon the note until 1901 did not constitute such *laches* as would render the guaranty unenforcible against the estate of the deceased president;

That the failure of the executors of the deceased guarantor to request the holder of the note to sue thereon indicated an acquiescence in the policy adopted by the bank with reference thereto.

APPEAL by the defendants, Laura M. Kimball and another, as executors, etc., of William S. Kimball, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 7th day of January, 1902, upon the decision of the court rendered after a trial before the court without a jury at the Monroe Trial Term.

*Walter S. Hubbell,* for the appellants.

*John P. Bowman,* for the respondent.

HISCOCK, J.:

This action was brought by the plaintiff as the assignee of the Union Bank of Rochester to recover the unpaid balance of a certain note for $50,000 and interest executed by the Union Investment Company, upon and under a certain guaranty executed by the defendants' testator and others. The principal question litigated upon the trial and argued in this court was and is whether the holder of said note was not so guilty of *laches* in not seeking more promptly to collect the same from the maker thereof as to release defendants' testator upon his guaranty which is practically conceded

to have been one of collection of said and other notes. The learned trial justice reached the conclusion that there had not been such *laches* as to release said guarantor, and we think his decision upon that and the other questions involved should be affirmed.

Prior to 1895 the Union Bank of Rochester, presumably through unfortunate or uncollectible loans, had become burdened with an excessive amount of real estate. The Bank Department criticised its management therefor and insisted that its holdings of such property should in some manner be disposed of. Thereupon defendants' testator, who was president of the bank and the holder of some stock therein, and some other men, who with him were managers of the bank, organized what was known as the Union Investment Company with a capital of $10,000. The object of the organization of this latter company was to take over from said bank its excess of real estate, there being given therefor the money paid in for the capital stock of the investment company and the notes of the latter which could then be carried in the assets of the bank in the place of said real estate. This process continued for some time when the Bank Department again criticised said bank, insisting in substance that the notes of said investment company must either be paid or secured. Thereupon the guaranty in question was executed by Mr. Kimball and two of his associates in said bank and said investment company, Gilman H. and Erickson Perkins. This instrument was executed February 11, 1895, and read as follows :

"For value received, we, the undersigned, severally and jointly guarantee the Union Bank of Rochester against any loss whatever by reason of any advances now made by it, or which may hereafter be made by it, to the Union Investment Company, or by reason of any paper now discounted, or which may hereafter be discounted, by said bank for said company.

> "GILMAN H. PERKINS,
> "ERICKSON PERKINS,
> "WILLIAM S. KIMBALL."

After the execution of said instrument other notes seem to have been executed by said investment company, and on March 25, 1895, the one involved in this suit was made, executed and delivered by it to said bank. Said note bore date on that day and was for the

sum of $50,000 payable to said bank on demand with interest. The proceeds of said note when discounted were used, in whole or part, by said investment company to pay for and take over some real estate held by the bank as some sort of security. Almost immediately after the execution and discount of said note Mr. Kimball died, and thereafter and on or about April 13, 1895, his will was admitted to probate, appointing the defendants executrix and executor respectively and they forthwith qualified and entered upon the discharge of their duties as such. On or about October 26, 1899, the Union Bank sold and assigned to the plaintiff said note and guaranty in question. The interest upon the note was paid semi-annually down to July, 1900. No formal demand for its payment was ever made until shortly before the commencement of action thereon by the plaintiff which seems to have been in January, 1901. As a result of that action judgment was obtained and execution issued against the maker of the note which was returned unsatisfied.

On or about May 25, 1896, the bank caused to be served upon the defendants, as executors of Mr. Kimball, a proof of claim which has been treated as covering and including the note in question. Independent of that, upon at least two occasions, one of them as early as July 13, 1897, one of the executors made an examination of the liabilities and assets of the Union Bank and saw the note and guaranty in question. The second examination was about a year later.

Independent of the general features disclosed by the foregoing facts, one of the witnesses testified that at some of the consultations respecting the formation of the investment company at which Mr. Kimball was present, it was talked or understood that " the Investment Company was to have all the time necessary to dispose of the real estate to the best advantage, and after it was disposed of the proceeds were to be applied upon these notes held by the bank; that is, the Investment Company was to pay its indebtedness to the bank." The trial court made a finding of fact substantially in accordance with this testimony.

There was no evidence to indicate that as matter of fact, as distinguished from presumption of law, the guarantors suffered any actual damage through failure to proceed sooner upon the note in

question. While at the time the note was made the investment company did have property, and at the time the execution was issued did not have any, it is to be remembered that the bank held a large amount of other indebtedness against the investment company for which the guarantors were liable, and it appears that from time to time, as property was sold by the debtor, the proceeds thereof were applied upon such indebtedness. Five thousand dollars had been thus paid upon the principal of the note in question prior to its assignment to the plaintiff.

Upon these facts and others less prominent, the learned counsel for the appellants has argued with much force and ability that as matter of law there was such delay and *laches* in failing to enforce the note under consideration as to bar plaintiff from any recovery thereon. He has also contended, in substance, that the investment company was identical with the Union Bank, and that there was no valid consideration as between the bank and Mr. Kimball for the guaranty by the latter of the indebtedness of the investment company. Our conclusion that the latter contention cannot be sustained is not attended by any doubt.

While the people who formed and were interested in the investment company were all managers and stockholders in the bank, it does not at all appear that all of the stockholders of the bank were interested in the investment company. The two corporations had entirely complete and distinct organizations. Whether we regard simply the money which it received upon the discount of the note in question, or the property which it obtained with such proceeds, the investment company received from the bank property which formed a valid consideration for the note, and also a valid consideration for the guaranty by Mr. Kimball that the bank should be saved harmless in the transaction. While there is no doubt that he was acting in part for the benefit of the bank, still the entire plan contemplated the surrender by the bank of the property of its stockholders to another corporation in which he and some of his associates were interested, and in which we are to assume various stockholders of the bank were not interested. All of the elements were present which would form a valid and legal foundation for the contract which he made with the bank and through it with its stockholders, that if it would pass its property over to the invest-

ment company and take the latter's notes therefor he would save it harmless.

We readily pass, therefore, to the consideration of the first and more debatable question above stated.

It is conceded, or at least not disputed, by the counsel for the respondent, that the instrument executed by Mr. Kimball was a guaranty of collection. We think it also must be held, in accordance with the argument of appellants against those of respondent, that the note in question, although payable upon demand, cannot be regarded as not becoming due until a formal demand was made. We regard it as settled that no formal demand of payment was necessary to make the note due as against the maker, and that it cannot be regarded as having lain without dishonor until a formal demand was made in 1901. (*Herrick* v. *Woolverton*, 41 N. Y. 581 ; *Wheeler* v. *Warner*, 47 id. 519; *McMullen* v. *Rafferty*, 89 id. 456.)

This brings us to the precise question whether there was inexcusable *laches* in proceeding upon the note within the doctrine of *Craig* v. *Parkis* (40 N. Y. 181) and other cases cited by the appellants, or whether, under all of the circumstances, the holder of the note lived up to its legal obligations with the guarantors.

The rule by which to measure these obligations and the correlative liability of a surety is well laid down in *Ulster County Savings Institution* v. *Young* (161 N. Y. 23, 30), where it is said : " The liability of a surety is measured by his agreement, and is not to be extended by construction. His contract, however, is to be interpreted by the same rules which are applicable to the construction of other contracts. The extent of his obligation must be determined from the language employed when read in the light of the circumstances surrounding the transaction. Hence, where the question is as to the interpretation and meaning of the language by which a party has bound himself, there is no difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been thus ascertained that the principle of *strictissimi juris* applies, and then it is that the courts guard the rights of the surety and protect him against a liability which is not strictly within the terms of his contract."

The law by implication read into the contract of guaranty executed

by Mr. Kimball the provision that before he became liable upon such guaranty for any debts of the investment company, reasonable diligence should be exercised to collect them of the debtor.   Within the authority just quoted we are to determine in the light of all the circumstances which appear in this case what reasonable diligence in the collection of the note in question involved. We think those circumstances prohibit the view that the holder of the note was to proceed for its collection against the maker with such speed and within such limit of time as would be beyond question ordinarily required.   We think upon the other hand that at the time the guaranty and note were respectively executed it was the assumption and expectation upon the part of all concerned that just the policy would be pursued which seems to have been followed, of allowing the notes to lie while the investment company endeavored to dispose of its real estate and pay them.   The entire plan adopted by the various parties contemplated such a line of action, and otherwise was useless.   The Bank Department at first criticised the holding by the bank of so much real estate, and then criticised the holding by the bank of the notes of the investment company and the failure to push the same to collection.   The only way in which these matters could be immediately cleared up was by a sale of the real estate to outsiders, and that, doubtless, involved a large sacrifice. Hence, the formation of the investment company to take the real estate and give the notes and the guaranty by Mr. Kimball and his associates of the notes in order to appease the Bank Department and secure delay in their enforcement.   Moreover, the guaranty was a continuing one.   If we should assume that the bank was bound within what would ordinarily be a reasonable time to insist upon payment of the note made by the investment company, it had a perfect right under the terms of the guaranty to take such payment in the form of a renewal note and of again renewing that indefinitely.   It would be idle to hold that Mr. Kimball had the right to insist that the bank must proceed with the immediate collection of a note or else lose his responsibility as a guarantor, when at the same time he left with it the power and right to escape such results by indefinitely extending and renewing such note.

Proof that it was the expectation and plan of all the parties that these notes should be carried along, pending the disposition by the

investment company of the real estate, does not by any means find its sole or main support in the testimony of the witness Perkins in regard to what was said upon that line when the investment company was formed and which the counsel for the appellant criticises. The sole and only apparent purpose of the organization of the investment company and of the guaranty of its notes was to devise some method of carrying along without criticism the real estate which had been acquired by the bank until the same could be disposed of and the proceeds paid over. The entire purpose was through the medium of the auxiliary company to convert the bank's real estate into cash and in the meantime to carry some substitute for this asset of the bank upon its books in some form which would be satisfactory to the Bank Department. It all involved the theory of delay in carrying the notes of the investment company until the real estate could be sold and the former paid up. Mr. Kimball, as the president of the bank and one of the organizers of the investment company, must necessarily be assumed to have known and contemplated this when he made his guaranty.

It does not appear that this course was deviated from or that either the original bank or its assignee, the plaintiff, unreasonably or neglectfully failed to pursue this line of action. There is no evidence that either before or after Mr. Kimball's death, the property taken by the investment company was dissipated, misappropriated or squandered. Upon the other hand, it does appear from the evidence that from time to time down to the year 1901, the investment company disposed of its assets and paid the proceeds thereof in to the Union Bank. Not only was the interest paid upon this particular note up to within six months of the time when action was commenced, but prior to its assignment to plaintiff as hereinbefore stated, $5,000 had been paid upon its principal.

The query may possibly suggest itself whether the legal relations and obligations of the various parties in respect of this note were changed by the death of Mr. Kimball immediately after it was executed. His death, which terminated his presidency of the bank, also terminated the power of the latter to take new notes under his guaranty which, as already suggested, is one of the ways in which it might have unquestionably extended the time of payment. It has not been, but perhaps may be, urged that the effect of such

death was to terminate the course of procedure which we have held theretofore to have been permissible to the holder of this note and to have placed upon it thenceforth the obligation of proceeding with the diligence which would ordinarily be required as against a guaranty of collection. We do not believe, however, that such argument could prevail. We think that the relations between the bank and defendant's testator are to be governed by the circumstances which existed at the time the contractual relations evidenced by the guaranty and note accrued. If we are right in our views, those circumstances at that time authorized the assumption upon the part of the bank that it was to give the investment company time in which to sell the real estate and pay the note. While Mr. Kimball's death necessarily prevented some things such as the taking of new notes in renewal of old ones, we believe it did not change the rights of the holder of the old ones as those rights existed before his death. His executors assumed his place as guarantor and the obligations which went therewith. They knew of this note within about a year after their appointment. If they for any reason had desired or deemed it wise to have a different course pursued from that which prevailed during the lifetime of their testator, they could doubtless have enforced such policy by proper notice to the bank. While it was not necessary for them to take any step in response to the notice of claim upon this and other notes served upon them by the bank, their failure so to do taken in connection with their other knowledge of the existence of this note and that it was being carried by the bank, does strongly indicate an acquiescence in and approval by them of the course which prevailed before their appointment. We think, therefore, upon this point that the bank had the right to continue its course of dealing with the investment company which had been established during the life of the original guarantor, his executors and representatives, with knowledge of the indebtedness, making no objection thereto.

Under all the circumstances, therefore, we think that the judgment appealed from should be affirmed, with costs.

McLENNAN, SPRING and WILLIAMS, JJ., concurred; DAVY, J., not sitting.

Judgment affirmed, with costs.